LUSBY *v.* ATCHISON, T. & S. F. RY. Co.

*(Circuit Court, D. Colorado. January 21, 1890.)*

1. CARRIERS—INJURIES TO PASSENGERS—PROVINCE OF JURY.
   In an action against a railroad company, where plaintiff testifies that, as the freight train on which he was a passenger neared a station, he arose to go and look out, when a sudden jerking threw him down, and that he lay in pain during the switching at the station, and suffered greatly from the jerking incident thereto, verdict in his favor will not be set aside on account of the strength of defendant's evidence that the injury occurred as they were preparing to leave and not as they approached the station, as the weight of the evidence and credibility of the witnesses are for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   A passenger in the caboose of a freight train, in getting up and starting to go and look out on the sounding of a whistle indicating approach to a station, is not guilty of contributory negligence, in the absence of proof that the jerking by which he was thrown down was so usual that he should have anticipated it.

At Law. On motion for new trial.
*Peterson & Thomas,* for plaintiff.
*C. E. Gast* and *Wells, McNeal & Taylor,* for defendant.
Before PHILIPS and HALLETT, JJ.

PHILIPS, J. This is an action for personal injuries sustained by the plaintiff while a passenger on one of defendant's freight trains running from Pueblo, Colo., to the town of Coolidge, in the state of Kansas. The case was tried by a jury, before HALLETT, J. Verdict for plaintiff. The case now stands on motion for new trial; and, by request of Judge HALLETT, I sat with him on the hearing of this motion. Not having time and opportunity, while holding court at Denver, to confer with him respecting the motion, at his request I submit for his consideration the views entertained by me respecting the merits of the motion.

The facts of the case, about which there is little controversy, are, briefly, as follows: The plaintiff, aged about 60 years, had some time prior to the accident been in defendant's employ at its train yards at Pueblo as a machinist, and had thereby become acquainted with the conductor and trainmen in charge of the freight train in question. He was not, however, so in the employ of the defendant at the time of the injury. On the 12th day of July, 1885, it being Sunday, he applied to the conductor in charge of a freight train on defendant's road to be carried as a "dead-head" from Pueblo to Coolidge, and was admitted by the conductor as a passenger on this train. The evidence showed that defendant was in the habit of carrying passengers in the caboose usually attached to such freight trains. This freight train was composed of about 46 freight-cars, with air-brake appliances connected with only a small portion of the front cars. On the other cars there were the customary hand-brakes, and there were brakemen for their operation. There was one other passenger in the caboose with the plaintiff. The plaintiff's testimony, in substance, was that, as this train approached the railroad station called Blackwell, the cars whistled the usual signal for approaching a railroad station; whereupon the plaintiff left his seat, and started to the

rear door of the caboose, for the purpose of looking out to see the station or town which they were approaching. Just as he had gotten upon his feet, and started towards the door, the car made a sudden and violent stop, which threw him backward, in the direction the car was going, with such violence as to carry him several feet, and falling in the door of the partition separating the front and rear parts of the caboose. The fall was so violent as to dislocate his hip, and cause great, if not permanent, injury. The evidence on the part of the defendant tended to show that this accident occurred after the train had gone into the station and stopped, and done some switching, taking on another freight-car, and occurred just as the train started out of the station, and that the sudden jerking resulted from the fact that the brakes were fastened upon the tender; that is, the air in some way, from exclusion by pressure in the cylinder, had fastened the brakes upon the wheels, and the engineer stopped for the purpose of taking them off. The engineer testified that it was necessary to stop suddenly for that purpose. On this latter branch of the case, the court in its charge to the jury instructed that if the injury occurred at this point, and under such circumstances,—that is, if it was necessary, in the judgment of the engineer, thus to suddenly stop and unfasten the brakes from the wheels,—the plaintiff could not recover.

Counsel for defendant, on the hearing of the motion for new trial, insist upon two propositions as the basis of its application for rehearing: *First*, that the weight of evidence is so overwhelmingly in favor of the proposition that the injury occurred, not as they approached the station as claimed by the plaintiff, but just as they were preparing to leave the station, and in the manner testified to on behalf of defendant, that the court ought not to permit the verdict to stand; and, *second*, that the plaintiff's own evidence shows that he was guilty of such contributory negligence on his part that he ought not to recover.

Upon a careful reading of all the testimony, as taken at the trial by the stenographer, I cannot see that the court would have been justified in taking the case from the jury on the first proposition. Certainly, when the plaintiff rested, there was not such evidence of this fact as would have justified its withdrawal from the jury. The general rule of practice is that the court may take the case from the jury at the conclusion of the plaintiff's evidence, when, in its opinion, admitting the evidence to be true, no cause of action is shown; but, when the failure of the plaintiff's case is made to depend upon the defendant's evidence, its credibility, weight, and probative force are questions for the jury. *Woods' Assignee* v. *Insurance Co.*, 50 Mo. 115, 116; *Herriman* v. *Railway Co.*, 27 Mo. App. 443. Where, however, the defendant's evidence is so overwhelming and indisputable in its nature and character as to leave no ground for variant conclusions in the minds of reasonable men, the court may direct the jury to find accordingly. So long, however, as the right of trial by jury exists, suitors are entitled to take the opinion of the jury on disputed facts; for they are the sole judges of the weight of evidence, and the credibility of witnesses. The court responds to the law, and the jury to the facts. The plaintiff is a competent witness under the law. His credi-

bility, and the weight to be attached to his testimony, are essentially questions for the jury. It may be conceded that the evidence on the part of the defendant quite clearly shows that the injury in question occurred after the train had gone into the station of Blackwell; but the plaintiff's evidence just as clearly shows that it occurred before the station was reached, and was the result of the manner of slowing up the train on its approach thereto. And there are some facts and circumstances testified to by the plaintiff, which, if they existed, very strongly corroborate his statement as to the time and place of the accident. He testifies, *inter alia*, that just after he fell he was picked up by the other passenger, and laid upon the seat or bench in the car, and that he lay there some 20 minutes, until they made the second start. He also testified that, while he was so lying prostrate and helpless upon this bench, the cars were doing some switching or making some movements in the switch-yards, and he made these significant statements:

"I was lying on the bench, suffering with intense pain. When they hooked on to start off I remarked to the man that picked me up: 'My God, they will kill me yet.' They were then either starting off, or doing something. * * * I know they were jerking things around pretty lively. I could not tell what they were doing. I was lying there in such intense pain I could not get up. I know every jerk they gave me there. I was afraid they would jerk the life out of me."

This would show that when the movements and violent jerking occurred about the switch yards, and when the train started off, the plaintiff had received his injury, and was prostrated. The jury, who looked upon and heard the witness, should be allowed to say whether they believed him or not. And this is the whole matter of this issue.

The only remaining question to be considered is as to whether the plaintiff's evidence shows such contributory negligence on his part as to make it the duty of the court to take the case from the jury. I know no sounder or safer rule respecting this much-mooted question of contributory negligence than that announced by courts of the highest character, as follows:

"There is no doubt that negligence is in many cases a question of law to be determined from the facts agreed or found by the jury. But where the facts in evidence may, in the judgment of sensible men, lead to very different conclusions, as to whether they establish want of care or contributory negligence, the jury is the tribunal selected to determine the question." *Norton* v. *Ittner*, 56 Mo. 352; *Railroad Co.* v. *Stout*, 17 Wall. 657.

The observations of that eminent jurist, Chief Justice COOLEY, in *Railway Co.* v. *Van Steinburg*, 17 Mich. 120, are entitled to respect:

"When the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would generally be regarded as prudence a definite rule of law. It is quite possible that if the same question of prudence were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the common opinion, he might find them differing from him as to the ordinary standard of proper care. The next

judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be a question of law. * * * While there is any uncertainty, it remains a matter of fact for the consideration of the jury. * * * The difficulty in these cases of negligent injuries is that it very seldom happens that injuries are repeated under the same circumstances, and therefore no common standard of conduct by prudent men becomes fixed or known. * * * Negligence cannot be conclusively established by a state of facts upon which fair-minded men may well differ."

It is insisted that because the plaintiff was upon a freight train that he must take notice of the manner of running and managing such trains; and that he must have known from observation that such trains, on approaching stations, were liable to sudden jerks in the effort to stop them, which rendered it unsafe for one to get upon his feet on approaching a station; and that no one so getting upon his feet, from any cause short of absolute necessity, could recover for being knocked from his feet by the halting of the train, no matter how great the violence of the halt, and no matter how unnecessary its suddenness. Negligence is always a relative question. It is a question of ordinary care. It is the caution and vigilance which reasonable men exercise under like circumstances. *Cayzer* v. *Taylor*, 10 Gray, 280; *Ford* v. *Railway Co.*, 110 Mass. 256; *Flynn* v. *Railway Co.*, 78 Mo. 202. Or, as it is aptly expressed in *Railroad Co.* v. *Terry*, 8 Ohio St. 581, it is "that degree of care which persons of ordinary care and prudence are accustomed to use and employ, under the same or similar circumstances, in order to conduct the enterprise in which they are engaged to a safe and successful termination." It seems to me as rather extreme doctrine to say that a passenger on a caboose attached to a freight train on its approach to a station, actuated by the natural curiosity to look out to observe the town and surroundings, in the absence of any windows permitting an outlook, would be heedless of his own personal safety simply because he got upon his feet under such circumstances; unless it can be maintained that the habit of such cars on approaching stations was to stop so suddenly and violently as to make it perilous for a passenger to be upon his feet at all at such a time, and that this fact was known to the plaintiff. Although this was a freight train, so long as the defendant admitted passengers upon it there was a mutual obligation imposed upon carrier and passenger. While a passenger entering upon such a vehicle of conveyance was subject to the inconvenience and perils ordinarily incident to the usual manner of handling such trains, yet he had a right to presume that the agents and servants in charge of this train would also perform their duty towards him and the public. "And it is not to be denounced as negligence for him to assume that he is not exposed to a danger which can only come to him through the disregard of duty and law on the part of another. This is just and reasonable." *Kellogg* v. *Railway Co.*, 26 Wis. 223; *Moberly* v. *Railway Co.*, 17 Mo. App. 542.

The plaintiff had a right, in his movements in and about that train, to assume that the conductor and engineer and brakemen, knowing that they had on board passengers liable to injury from the manner of run-

ning and stopping such a train, would have their apprehension quick-
ened, their vigilance and caution increased, in proportion to the risk to
the lives and limbs of its passengers.    So that the plaintiff, as he claims,
not reasonably anticipating on the sound of the whistle that the train in
motion would make a violent lurch or movement backward, started to
look out; and, while the law would exact of him an increased degree of
care on thus getting to his feet, it seems to me that it is not maintain-
able, on the now recognized limitation and application of the doctrine
of contributory negligence, that it was *per se* negligent for him to get upon
his feet; and this, for two reasons:    Because the evidence fails to show
that such sudden and violent stopping, as occurred in going into the sta-
tion, was so usual that a passenger, with no more knowledge than the
plaintiff had, should be held to reasonably anticipate the shock; and be-
cause plaintiff, in rising from his seat, had a right to rely upon the pre-
sumption that the engineer would do his duty by stopping his train so
as not to produce unusual hazard, either by beginning the effort to slow
up further back, or else calling to his aid the hand-brakes, which the
evidence tends to show was not done in this case.    The evidence of the
conductor, Smith, tended to show that while he had in his experience
witnessed as sudden and violent halt as claimed by the plaintiff, yet it
was unusual, and could have been largely prevented, or rendered unnec-
essary, by gradually letting on the air, and calling to his assistance the
hand-brakes.    As before suggested, when the defendant admitted to
passage on this caboose the plaintiff, it took upon itself the obligation
which the law imposes upon a carrier of passengers, which is the exer-
cise of "the utmost care and diligence of very cautious persons; and, of
course, they are responsible for any, even the slightest, neglect."    Story,
Bailm. § 601. "For the law will, in tenderness to human life and hu-
man limbs, hold the proprietors liable for the slightest negligence, and
will compel them to repel, by satisfactory proofs, every imputation
thereof."    Id. § 601*a*; *McKinney* v. *Neil*, 1 McLean, 540; *Stokes* v. *Salton-
stall*, 13 Pet. 181.    In other words, it was bound to the exercise of a
higher degree of care and caution, in running and stopping its train, to-
wards a passenger on a freight train than if the cargo consisted of inan-
imate matter or live-stock.    So that on approaching a station, knowing,
as the engineer did, the composition of his train of 46 cars, with the air-
brake working upon a few only of the forward cars, and the others de-
pendent more or less upon the application of the hand-brakes, and the
liability of such a train in slacking up to shock and disturb the rear-
most car in which there were passengers, (although it may be conceded
that more or less violence in halting was necessarily incident to the man-
agement of such a train,) the engineer was under obligation to use every
precaution and means at his command to prevent the unnecessary ex-
posure of the passengers to injury.

Looking at the facts and circumstances attending this injury, it seems
to me that it was peculiarly a question of fact for the court to submit to
the jury, as it did in its charge, as to whether or not the plaintiff him-
self in his conduct was heedless or negligent of the law of self-preserva-

tion, and unnecessarily exposed himself to a known or apparent danger, or whether or not the engineer and other servants of the defendant exercised the utmost vigilance and care to prevent the unnecessary exposure of its passenger to injury.    As said in *Railroad Co.* v. *Hazzard*, 26 Ill. 373–387:

"The care required is not that care without the exercise of which accidents may happen; as, for example, after a passenger is received on board he would be safer—less liable to accident—if locked up in the car, or chained to one of the seats or other fixture so as to deprive him of locomotion, moving from car to car.    This would be the very utmost degree of care and caution; but that is not required, so that the epithet 'utmost' must be taken with some qualification.    *    *    *    In *Boyce* v. *Anderson*, 2 Pet. 150,    *    *    *    Chief Justice MARSHALL held that the responsibility of the carrier (in the instance of a loss of negroes in transport by the upsetting of the boat's yawl) should be measured by the law applicable to passengers rather than that applicable to the carriage of common goods, and that the rule of care is that of ordinary care,—the care which all bailees for hire owe their employer."

And this rule in *Stokes* v. *Saltonstall*, *supra*, was afterwards extended so as to make the carrier liable "if a disaster was occasioned by the least negligence or want of care or prudence on the part of the defendant." The case at bar is distinguishable in its facts from the case in 26 Ill., *supra*, in this: that there the injury occurred by reason of the passenger unnecessarily and carelessly passing to and standing on the platform of the car as it halted, and the violence in movement which resulted therefrom was occasioned by the engineer of the train letting on a large quantity or force of steam, which in his best judgment was necessary to overcome the friction of frogs and switches.    In that case it was held that the company would not be liable if in doing so the engineer exercised a reasonable discretion; and it was in recognition of this rule that Judge HALLETT, in his charge to the jury in this case, directed them that the plaintiff could not recover, if the injury resulted in the act of starting from the station, and in applying such sudden force of steam as in his judgment was necessary to loosen the binding brakes; whereas, the case at bar went to the jury, to ascertain whether or not the defendant in stopping its train on going into the station did it in an unusual, unnecessary, or negligent manner.    In my opinion, the peculiar state of proofs respecting this issue well warranted the action of the court in taking thereon the opinion of the triers of the fact.

The motion for a new trial was overruled, and judgment entered on the verdict.

HALLETT, J., concurs.