### GERMAN-AMERICAN FILTER CO. OF NEW YORK v. ERDRICH.

(Circuit Court, E. D. Pennsylvania. November 21, 1899.)

#### No. 27.

**1. PROCESS PATENTS—ANTICIPATION.**

One who accomplishes a result by a process which he understands but partially, or not at all, has made no invention, and cannot deprive another, who afterwards discovers and proclaims the true principle of the operation, of the rights of an inventor.

**2. SAME—INVENTION.**

A process, all the steps of which are old, may be new and patentable, when, co-operating with each other, they produce a result that is new and useful.

**3. SAME—INFRINGEMENT—FILTERING PROCESS FOR BEER.**

The Stockheim patent, No. 378,379, for a filtering process for beer, in which the operation is performed by a filter placed between the store cask and the keg, through which the beer is forced under pressure, and which, by means of back pressure, and vents at the top, by which any free gas, air, or foam accumulating in the filter may be drawn off. is kept at all times full of solid beer, to insure a steady flow, and prevent the escape of gas during the operation, was not anticipated, and is valid; also, construed, and *held* infringed.

This was a suit in equity for infringement of a patent. On final hearing.

Wetmore & Jenner, for complainant.

Cyrus E. Lothrop, for respondent.

GRAY, Circuit Judge. This suit is brought for alleged infringement of letters patent No. 378,379, dated February 21, 1888, for a "filtering process for beer," granted to Simon Uhlmann and Frederick Uhlmann, as assignees of Heinrich Stockheim, of Mannheim, Germany; application for same having been filed November 28, 1887. Complainant's title to the patent accrued by a duly executed and recorded assignment. The patent describes and claims a process of finishing lager beer in completing it for the market, so as to take out therefrom the impurities and retain therein the carbonic acid gas. Mr. Paul Weidner, of Detroit, Mich., is the manufacturer of the filter complained of; having sold the same to the defendant, who, with it, in connection with certain appliances of his brewery, carries out the alleged infringing process. The bill prays the usual equitable relief, injunction, and accounting.

The contention of the defendant is (1) that the patent in suit (at least, in so far as it can be held to apply to the process employed

by defendant) is void, both by reason of want of novelty, and because the process of the patent is nothing more or less than the natural and inevitable function and operation of the apparatus of the patent to the same inventor, application for which patent was filed March 2, 1887; and (2) that, even granting the patent in suit to be valid, the defendant does not infringe.

The specifications state the object of the invention thus:

"The object of this invention is the filtration of beer which contains mechanical impurities, and also carbonic acid gas under pressure. In the filtration of such liquids it is important that the liquid—beer, for example—should be filtered continuously in its passage from the store cask to the keg into which it is drawn for sale, without material loss of the gas contained in the beer, and without material foaming in the keg into which the filtered beer is delivered. The methods in use prior to my invention for clearing beer of the yeast which is produced in it as a product of fermentation have generally involved the use of isinglass, by which the yeasty particles are collected and precipitated to the bottom of the tun or cask containing the beer. Isinglass is, however, costly, and involves a very large annual expenditure where any considerable amount of beer is brewed, and much trouble in preparing it for use as a 'fining,' and it is slow in its operation; nor are the results entirely satisfactory, as all of the yeasty particles are not thereby removed, but some portion remains, and, yeast being a fungous growth, that which remains propagates more yeast, fermentation continues, and in consequence the beer is apt to become cloudy and spoiled. The result is especially noticeable in beer which is bottled and intended to be kept for some time, either for export or domestic use. In mechanical filtration, variations in the supply of beer to the filter, and in the speed with which the filtered beer is discharged into the keg, permit the carbonic acid gas generated in the beer to escape in considerable quantities while the beer is passing through the filter, and the beer, having lost its carbonic acid gas, or a considerable quantity of it, comes out flat and insipid, or is discharged into the keg in a foamy condition, and soon becomes worthless, besides which the escape of the gas in the filter causes foaming therein, the foam collects upon and clogs the pores of the filtering substance, or the gas permeates the filtering substance, thereby affecting its efficiency as a separator of mechanical impurities, or both results ensue; and thus the operation of the filter is materially retarded, the variations of supply and discharge are increased, and in consequence the filtering substance fails to collect much of the yeast. To modify these results would require the frequent changing of the filtering substance, and this would involve not only expense for filtering material, but considerable loss of beer, and delays in the filtering operation. Continuous filtration, without material variation in the speed with which the beer is discharged from the cask, is also important, because if the speed of the discharge is materially diminished the accumulated air pressure will burst the cask, unless it is closely watched; and the cask being usually in a cellar, where neither continuous sunlight nor gaslight is permitted, because either would elevate the temperature of the cellar, such watching is inconvenient. For these reasons, among others, mechanical filtration has not, I believe, been generally or successfully practiced by beer brewers before my invention. By my improved method of filtering I dispense entirely with the use of isinglass or other finings, and thus very great economy is secured, the beer is thoroughly clarified, all or substantially all of the yeasty particles being removed, the operation of filtering is rapid and continuous, without material variation in speed, and without the necessity of changing or cleansing the filtering substances, the carbonic acid gas is substantially preserved in the beer, and the beer comes out of the filter retaining all its brilliancy and liveliness, ready to be discharged into the keg at the racking-off bench without any danger of subsequent cloudiness or other deterioration due to the filtration, and without having had imparted to it any undesirable taste. The drawings illustrate the arrangement of mechanism in and by which my improved filtering method is carried out."

Then come descriptions of the drawings which accompany the specifications. Afterwards they proceed as follows:

"In case any air enters the filter, either through the connecting pipes or otherwise, or if any gas escapes from the beer from changes or variations of pressure either on the entrance or discharge side, or by reason of partial clogging of the filtering media, or from other cause, the air or gas, as the case may be, at once ascends to the top of one or other of the gas-traps, where, being easily observed, it is, together with the foam thereby caused, allowed to escape through the vent-cock, the filtration meanwhile proceeding without any interruption or disturbance. In the drawings, Fig. 1, the racking-bench is shown as situated on the floor, or on a level above that of the store cask, and this is the arrangement, I believe, in most breweries. The result is that the column of beer in the pipe, G, and hose, M, constitutes a back pressure by which the filter and the gas-traps at the top thereof may be kept completely filled with beer; but in some breweries the racking-bench is situated on the same floor or level as the cask. In such case a back pressure sufficient to keep the gas-traps filled with beer should be formed by elevating the hose, M, at a point between the filter and the racking-off bench, a little above the top of the lantern, or by narrowing the capacity of the hose, M, relatively to the capacity of the hose, k, and the air pressure at the cask. As there is always more or less circulation of beer in the lantern, and the lantern being of glass, the beer therein may be conveniently observed, and the quality of the beer passing through the filter—that is, its freedom from impurities—may be known. Of course, if the gas-trap is not of lantern construction, a sample of the filtered beer may from time to time be drawn off for observation by means of the vent-cock, and the vent-cock may from time to time be opened to allow the escape of any air, gas, or foam which may have accumulated in the gas-trap; but this is less convenient than to make the trap of lantern construction. The interior of the chambers of the filter may also be so formed as to constitute traps for air, gas, or foam, the vent-cocks being placed at their highest points; but such arrangement is still less desirable.

"Having thus described my process, and the apparatus in and by which it is conducted, what I claim as new is: (1) The process of filtering beer, consisting in drawing the beer to be filtered from the cask under a pressure exceeding atmospheric pressure, conducting the same to and through a filtering apparatus in which that pressure is maintained during the filtering operation, keeping the filtering apparatus full of beer, collecting and carrying off any air entering the filter along with the beer and gas separating from the beer during the filtering operation, and discharging the filtered beer from the filter under pressure, substantially as hereinbefore set forth. (2) The described process of filtering and keeping beer, which consists in forcing the beer under a pressure exceeding atmospheric pressure from the store cask through a filtering apparatus, and thence to the keg, keeping said apparatus full of beer during the operation, and collecting and carrying off from the beer during its passage from the store cask to the keg air that may be mingled with the beer and gas that may separate from the beer, substantially as and for the purposes hereinbefore set forth. (3) The process of filtering beer, consisting in drawing the beer from the cask under a pressure exceeding ordinary atmospheric pressure, forcing the beer under said pressure through a filter, maintaining that pressure in the filter during the filtering operation, and creating and maintaining a back pressure in the filter, so as to keep the filter full of beer, substantially as described. (4) The process of filtering beer, consisting in drawing the beer from the cask under a pressure exceeding ordinary atmospheric pressure, forcing the beer under said pressure through a filter, maintaining that pressure in the filter during the filtering operation, creating and maintaining a back pressure in the filter, so as to keep the filter full of beer, and collecting and carrying off from the beer any gas separating from the beer on its way from the store cask to or through the filtering apparatus, substantially as described.

"Signed at New York, in the county of New York and state of New York, this 7th day of October, A. D. 1887.                    Heinrich Stockheim."

This patent has heretofore been the subject of litigation in, among others, the following suits, in which judgment went for complainant, sustaining the validity of the patent, finding infringement of all the claims, and directing an injunction and accounting, viz.: Uhlmann v. Brewing Co. (C. C.) 41 Fed. 132, decided January, 1890, in circuit court for Northern district of Illinois, by Gresham, Circuit Judge; Id. (C. C.) 53 Fed. 485, decided January, 1893, in circuit court for Eastern district of Pennsylvania, by Dallas, Circuit Judge. Unless constrained to the contrary by very strong reasons, such as the introduction of new evidence, this court will feel itself bound by the two decisions referred to, establishing the validity of the patent in suit. A careful consideration of the record and the arguments of counsel have failed to disclose to the court any grounds for a different decision in this case. The alleged anticipations now proved, which were not before the court in either of the previous cases, have been carefully examined, and have not been found to have embodied and set forth, with the clearness required by the law, the substantial process of the patent in suit. Some of them seem to have employed one or more of the steps of the Stockheim process, but in none of them has the court been able to find that process, as a whole, embodied and explained. The result to be achieved was the delivery of beer from the storage cask to the racking-bench and the shipping barrels without loss of its carbonic acid gas, and freed from its impurities by filtration between the storage cask and the racking-bench. The evidence discloses that this had been for a long time a desideratum with German and American brewers, before the invention of the Stockheim process; that, previous to the publication of his process, numerous attempts at mechanical filtration of beer had been made in Germany, and some in this country, but without success. The method of clarification and fining beer in general use was that of placing beech chips or shavings in the storage cask, which attracted the grosser particles of yeast and other impurities; and an isinglass solution, which, after the second fermentation had begun, was poured into a cask, and spread in a gelatinous film over the surface of the beer, and, gradually sinking to the bottom, carried with it the yeast germs and other impurities of fermentation. But this required from one to several weeks, nor did it always do its work effectually; and the isinglass was expensive, and added materially to the cost of manufacture. This old method also made necessary the use of a large quantity of chips, and the process required time, and the judgment and discretion of skilled labor, besides sometimes imparting an unpleasant taste to the beer. The advantages to be obtained by the mechanical filtration of beer between the storage cask and the racking-bench, if it could be successfully accomplished, were obvious. The principal difficulty which presented itself in the efforts made for the accomplishment of such filtration was the loss of carbonic acid gas in the passage of the beer through the filter, especially of the highly-charged beers in this country, and the consequent foaming and turbidity of the beer when delivered at the racking-bench. The process of racking

off beer was and is through a hose from storage cask or chip cask to the racking-bench and shipping barrels. Through this hose the beer was forced by the pressure in the storage cask, which was above the atmospheric pressure, and was generally maintained or increased by an air pump during the operation. After the air was expelled from the hose, and such foam or gas as would form on the comparatively small exposed surface of beer in the hose had been discharged at the racking-bench, a solid stream of beer was easily maintained by the pressure of air and gas in the storage cask and from it to the shipping barrels, and, by keeping the flow uninterrupted until the cask was emptied, no opportunity for loss of carbonic acid gas or formation of foam occurred. The difficulty of interposing a filter between the storage cask and the racking-bench, before the Stockheim process was practiced, was, as we have stated, that the continuous and solid stream of beer was interrupted by passing through the filter. The tendency, in the escape of beer from the hose into the larger receptacle of the filter, would be to relieve it of some of the pressure, thereby liberating gas and presenting free surfaces, which tended to accelerate, by attraction, further escape of the gas. This would naturally produce a disturbance in the filter, which would show itself in foam at the racking-bench. The forcing of the beer through the filtering material by the pressure in the storage cask would also naturally tend, by dividing the beer into little streamlets, to produce free surfaces, and consequent liberation of gas. All this was the result of breaking up the continuity and solidity of the stream from the storage cask to the kegs. It seems easy enough now, that the method has been suggested and successfully tried, to say that the remedy for this state of things would be to provide for filling the filtering apparatus with beer, and to keep it full under pressure, so that there should still be a solid stream of beer from the storage cask to the kegs, just as it was in the hose before the use of the filter; the filter only, in its place, enlarging the dimensions of the stream, but continuing its solidity and continuity, so that there should be no opportunity for free surfaces or escape of gas. But this has been true in the case of many inventions whose utility, novelty, and patentability are everywhere recognized. They seemed simple and obvious methods of procedure or operation after they had been once explained and demonstrated.

The really essential features of the process of the patent in suit, as described by Dr. Henry Morton, a distinguished expert who testified in the cause, are:

"The keeping of the filter full of solid beer, by two operations, in the main: (1) The maintenance of an adequate pressure above that of the atmosphere; and (2) the absence of all free surfaces of air, gas, or foam, by the removal of the same whenever necessary, and the maintenance of back pressure, pressure in the filter, and forward pressure, or pressure on the supply cask, so as to prevent the recurrence of such free surfaces."

These essential features seem to be covered by the claims of the patent in suit, claim 3 and claim 4 especially comprehending them in their broadest construction. The "back pressure" of the third

and fourth claims, by which the filter was to be kept full of beer, is a most important step in the process. How it is to be effected is explained in the specifications as follows:

"In the drawings, Fig. 1, the racking-bench is shown as situated on the floor, or on a level above that of the store cask; and this is the arrangement, I believe, in most breweries. The result is that the column of beer in the pipe, G, and hose, M, constitutes a back pressure by which the filter and the gas-traps at the top thereof may be kept completely filled with beer; but in some breweries the racking-bench is situated on the same floor or level as the cask. In such cask a back pressure sufficient to keep the gas-traps filled with beer should be formed by elevating the hose, M, at a point between the filter and the racking-off bench, a little above the top of the lantern, or by narrowing the capacity of the hose, M, relatively to the capacity of the hose, k, and the air pressure at the cask."

If either of these modes of producing "back pressure," viz. elevating the racking-bench, or simply elevating the outlet hose above the top of the filter, or narrowing the capacity of the outlet hose relatively to that of the inlet hose, and if the forward air pressure at the storage cask, be adequate, the requirements of the claims of the patent in that respect are met. The process described in claim 3 may be considered as part of the entire process of the patent, and refers to a condition which other steps of the process aid in bringing about. The entire process provides for the collection and discharge of gas or air in the filter, or escaping at the commencement of the operation, or which shall escape during the operation. This provision enables the filter to be filled with beer directly after it is turned on from the storage cask, the initial discharge of air, gas, and foam producing a condition of solid beer, or "schwarz," fit for discharge under pressure through the outlet hose to the shipping kegs; the continuity of the solid stream from the storage cask through the filter and out and on to the racking-bench being maintained by the back and forward pressure on the beer in the filter in the way described in that step of the process. No special device for discharging the air and gas is essential to the process. The lantern traps and escape cocks, as described in the specifications of the patent, are suggested as preferable; and the provision for escape of air and gas, both in the receiving and discharge chambers of the filter, would seem more efficient than such a provision only as to the discharge chamber. But one or both carry out measurably that step in the process. So, also, the initial discharge of air, gas, and foam from the filter, followed by the solid stream of beer under pressure through and filling both hose and filter from storage cask to racking-bench, would, under favorable conditions, be sufficient to allow of the almost continuous flow of the beer, without further disturbance from escaping gas, and render unnecessary a provision for further escape of gas during the filtering operation. But whether there were such provision, or not, or whether such further provision should become useful or important, or not, the operation successfully conducted, as described, with the initial discharge alone of the air and gas, would be a carrying out of the process of the patent.

This statement of what are conceived to be the essential features and characteristic operation of the process of the patent in suit

98 F.—20

brings us to the consideration of the alleged infringement thereof by the filtering apparatus admitted to have been used by defendant. From a careful study of the expert evidence on both sides, the drawings and exhibits, including the model of defendant's filter as used by him, the conclusion has been reached that the process of filtering beer, as practiced by defendant, is substantially that of the patent in suit, and therefore an infringement of complainant's right. We find in defendant's apparatus and process, that the beer to be filtered is drawn from the cask under a pressure exceeding atmospheric pressure, and that the same is conducted to and through a filtering apparatus in which that pressure is maintained during the filtering operation; that the air and gas in the filter at the commencement of the filtering operation, or that entering the filter along with the beer, and separating from it at the commencement of the operation, are collected and carried off at the top of the filter, and through the hose connected therewith, to the racking-bench, for discharge there into a trough; that, this obstacle to keeping the filter full of beer during the filtering operation having been removed, it is maintained in that full condition, so as to make a solid and continuous stream of beer from cask to keg, by a forward and back pressure upon the beer in the filter; and that the beer is discharged from the filter under pressure. This is substantially what is set forth in the first claim of the patent in suit. The fact that defendant still uses isinglass for fining his beer in the cask, and also practices a refrigeration not contemplated in the Stockheim process, does not make the method employed less an infringement, though it may be that the conditions thus produced make some of the devices contemplated in the entire Stockheim process less necessary than they otherwise would be, and therefore have enabled defendant to dispense with them. The cooling of the beer, for instance, may have made the escape or liberation of gas in the filter, after the filtering operation has begun, less likely to occur than with the unrefrigerated beer with which the Stockheim process was originally concerned. Nor is it necessary, in order that the process of the patent should be employed, that there should be a provision for carrying off from the filter gas that may escape therein after the filtering operation has been going on. As we have shown before, the initial discharge of gas, by which it was possible for the filter to be filled, and that full condition maintained by the forward and back pressure, was a carrying out of the process of the patent, as far as it went. That it was less efficient than the process in its entirety, or that modern conditions allowed certain precautions in the process to be dispensed with, does not militate against the position assumed. And yet it may be noted in this connection that Mr. Uhlmann, in his testimony, says:

"I asked the foreman whether he had ever had occasion to open the cock in connection with the outlet pipe on top of the filter, except when he commenced the operation, as I had seen. He said: 'Yes; sometimes once or twice in a day, whenever the beer foams at the racking-bench; sometimes not at all.' He only opened it when the beer foamed, because there must be no foam in the filter."

But whether we consider this as sufficient proof that air or gas was carried off from the filter and out of the line of discharge into

the keg after the preliminary discharge of air and gas in commencing the operation, and after the filter had been filled with solid beer, or not, we are of opinion that the air and gas carried off at the commencement of the operation should be considered as carried off "during the filtering operation," within the meaning of the first claim, as much as though it had occurred after the filter had been filled with solid beer by the preliminary removal of air and gas. In a general way, what we have just said applies to the same feature of claim 2. The process, in its entirety, rests upon all the claims, though each separate claim may describe the process from a somewhat different point of view from that of the others. Claim 3, in our opinion, is the broadest, in that, though it may be said to describe a part only of the entire process, it explains what seems to us the essential condition requisite to a successful operation of the process of filtering beer under pressure greater than atmospheric pressure, without material loss of its carbonic acid gas. That condition existing after the preliminary expulsion of gas and air from the filter, it should be kept full during the filtering operation, so as to maintain a continuous and solid stream of beer from cask to keg, by means of forward and back pressure upon the beer in the filter, as described in this claim and the specifications. As we think has been shown, certain steps of the process (as, for instance, the discharge of gas and air after the filtering operation has been going on) may not be necessary to the successful operation of the process; but the condition just described, of keeping the filter full after the preliminary expulsion of gas, by forward and back pressure, is a condition absolutely essential to the process, however practiced, and is an end aimed at in the other steps of the process. This leading thought of the inventor, however obvious it may now seem, entered into no other filtering device, so far as the evidence discloses,— at least, in such fashion that its importance as a governing condition of the filtering operation might be understood. That this condition should have existed by accident in any process other than Stockheim's, or have been produced without its importance being recognized and proclaimed, cannot affect Stockheim's claim. It may well have been that, before the Stockheim process was explained, some one may have filtered highly-charged beer under pressure successfully; the filter having been kept full of beer the while. But, so far as the evidence discloses, no one recognized that as the essential condition of a successful operation, or explained its function as a step in the process. One who accomplishes a result by a process which is only partially or not at all understood by him has invented nothing, and cannot deprive another, who afterwards discovers and proclaims the true principle of the operation, of the rights of an inventor.

In the Weidner-Gutsman circular, there is shown a cut representing a filter made by Weidner, in every respect like the defendant's filter, except that it has on the top of the outlet, just after it leaves the filter, a lantern trap and escape cock like that suggested in the Stockheim process patent. It seems to be admitted by defendant's counsel that they considered the Weidner filter, so constructed, though in every other respect like that used by defendant, an in-

fringement of Stockheim's patent. If that be the case, we have no difficulty in saying that the mere dispensing with this lantern trap and escape cock, and substituting therefor the method of discharging air and gas through the top of the filter at the same place where the lantern was placed, as practiced in defendant's filter, does not so alter the process as to avoid infringement.

The defendant's counsel has argued with great vigor that all the steps in the process are old, and that practicing them, or any of them, is within the right of the defendant or others. This is true, if, in practicing them, the process of the patent in suit is not employed; for it is well settled that a process, all the steps of which are old, may be new and patentable, when, co-operating with each other, they produce a result that is new and useful. In this respect, a process is like a patentable combination of old elements, and the philosophy of each is the same. It would seem as if defendant's counsel, in his exceedingly able argument and brief, had confounded the "back pressure," spoken of and described in the specifications and claims of the patent, with the pressure that had been used in various old operations, having for its object the retaining of carbonic acid gas in the receiving and shipping vessel. This is not the "back pressure," as the court understands it, to which the specifications and claims refer. That to which they refer was intended to produce, and does produce, a pressure on the filter which tends to keep the filter full, and prevents the escape of gas from the beer in the filter. It was not intended, and does not operate, to prevent the escape of gas from the beer while in the receiving vessel. It was pressure on the filter, and not in the receiving vessel, that played so important a part in Stockheim's process.

The defendant also, in his brief, insists that the initial discharge of air and gas in the filter provided for by the Stockheim invention is merely the displacement of air and gas in the filter by the entry of beer, such as takes place in every vessel when being filled with a liquid, and that therefore so old and simple a suggestion could not be the subject of invention. But the Stockheim invention was not precisely this, but, as a step in his process, it consisted in the venting of gas and air escaping from the beer, and the keeping of the filter full afterwards; thus preventing the formation of free surfaces, and the consequent escape of gas. The means employed for this step in the process, it is true, may be old; but, in connection with the other steps of an entire process, it is entitled to the consideration given it by Stockheim.

In view of the premises, it is hardly necessary to extend the limits of this opinion by a more detailed discussion of the essential features of the process embodied in the patent in suit, as they may affect the question of infringement. It remains, therefore, only to say that, in the opinion of the court, the process and apparatus used by defendant, as proved or admitted in this suit, invade the domain of Stockheim's invention, and infringe the patent of complainant. Let there be a decree entered for complainant as prayed for in the bill, but for actual damage, without increase. and for the appointment of a master.