PASLEY *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY.

Opinion delivered May 6, 1907.

1. CARRIERS—OPERATION OF FREIGHT TRAINS.—While it is not practical to operate freight trains without occasional jars and jerks calculated to throw down and injure careless and inexperienced persons stand-

ing in the car, jars of great, unusual and unnecessary violence would be evidence of negligence on the part of the trainmen. (Page 27.)

2. SAME—CONTRIBUTORY NEGLIGENCE OF PASSENGER IN STANDING UP.—It can not be said as a matter of law that every time a passenger on a freight train arises from his seat he is guilty of negligence; it is only when his standing is so protracted or uncalled for that it is unnecessary and imprudent that the question of his negligence will be taken from the jury. (Page 28.)

Appeal from St. Francis Circuit Court; *Hance N. Hutton,* Judge; reversed.

*N. W. Norton,* for appellant.

To stand on a moving train should no more be negligent *per se* than to get off one. And it is not negligence *per se* to alight from one. 49 Ark. 182; 4 S. W. 755. It is a question for the jury to say whether a passenger is guilty of contributory negligence in stepping from a street car on the side next to a parallel track. 93 S. W. 990. The plaintiff's act can not defeat his recovery unless he used less than ordinary care. 2 Wood, Railway Law, 1085. If fair minded men might differ as to whether it was dangerous to arise from a seat at that time and place, it was a question for the jury. 76 Ark. 227.

*T. M. Mehaffy* and *J. E. Williams,* for appellee.

When a railroad company posts notices and warns the people of danger, it has done all that it can do. 30 S. W. 574; 16 Pac. 937. It is impracticable to operate a freight train without occasional jars and jerks. 71 Ark. 590.

RIDDICK, J. W. H. Pasley brought this action against the defendant railway company to recover three thousand dollars as damages for an injury he received while a passenger on one of its trains. The defendant denied that it was guilty of any negligence, and further alleged that the injury of the plaintiff was due to his own negligence in standing up while riding in the caboose of a freight train. On the trial, after all the evidence was in, the circuit judge held that plaintiff was guilty of negligence contributing to his injury, and directed a verdict in favor of defendant. Plaintiff appealed, and the only question presented is whether the facts make out a case sufficient to go to the jury. The facts, briefly stated, are that plaintiff,

who was a minister of the gospel, took passage on the railway of defendant in November, 1905, from Lexa to Forrest City on a mixed passenger and freight train. The train was a local freight train with a caboose attached in which passengers were carried. When the train stopped at Lexa on that day, the caboose was about seventy-five yards south of the depot. While the caboose was in that position, the plaintiff boarded it and took a seat near Mrs. Wall, a lady with whom he was acquainted. Shortly afterwards the train commenced to move slowly northward. When the caboose was a short distance from the depot, Dr. Walls, the husband of the lady, got on the train, and he spoke to the plaintiff. The railway company was making some improvements upon its roadbed and track near the station, using a steam plow in its operations. Dr. Wall, who was standing near the door of the caboose, asked his wife and the plaintiff to look at these improvements. Plaintiff in his testimony said that he arose from his seat about the time Dr. Wall boarded the train, but that he was not certain whether he got up to shake hands with Dr. Wall, to wave good bye to his friends, or to look at the improvements that were being made by the company. It was shown that in a statement made shortly after his injury he had stated that after the train started he and Mrs. Wall got up to look at the improvements. Whatever may have been the cause of his arising from his seat, the evidence shows that they stood up but a short time while the train went about three car-lengths when a sudden jar of the train threw both of them to the floor and plaintiff had his foot twisted in the fall, and one of the small bones broken, from which he suffered considerably. Plaintiff and Mrs. Wall both testified that the shock was one of extraordinary and unusual violence, even from a freight train, while the employees of the company testified that the train was only moving at the rate of about two miles an hour, and that the jar was caused by stopping it when the caboose reached the depot, and that there was nothing unusual about it. There was also evidence that the company had posted in the caboose printed notices warning passengers against standing up or sitting in the movable chairs while the train was in motion, but plaintiff testified that he did not see any notice.

We said in the case of *Krumm* v. *St. Louis, I. M. & S.*

*Ry. Co.*, 71 Ark. 590, that it was "not practical to operate freight trains without occasional jars and jerks calculated to throw down and injure careless and inexperienced persons standing in the car." To quote the language of Judge Elliott, "the duty of the company is therefore modified by the necessary difference between freight and passenger trains and the manner in which they must be operated; and, while the general rule that the highest practicable degree of care must be exercised to protect passengers holds good, the nature of the train and the necessary difference in its mode of operation must be considered, and the company is bound to exercise only the highest degree of care that is usually and practically exercised and consistent with the operation of trains of that nature." For these reasons a company can not as a rule be said to be negligent because there are occasional jars and jerks in the operation of such trains, though jars of great, unusual and unnecessary violence would be evidence of negligence on the part of the employees operating the train.

As jars are common on such trains, the passenger must guard against them by remaining in his seat, and by not unnecessarily exposing himself to danger from such jars and jerks. But, as it is tiresome for one to take a long journey on a train without occasionally arising from his seat, and as matters of necessity or convenience frequently justify a passenger, even on a freight train, in shifting a position or standing for a moment, it can not be said as a matter of law that every time a passenger on a freight train arises from his seat he is guilty of negligence. It is only when his standing is so protracted or so uncalled for that the court can say as a matter of law that it was unnecessary and imprudent that the question of his negligence will be taken from the jury. In the Krumm case, above referred to, a passenger on a freight train, desiring a drink of water, stood up while the train ran a mile and a half, waiting for the water to cool, and we held that this was negligence; for the water would have cooled just as rapidly while he was in his seat as while he stood, and that the exposure by standing was unnecessary and prevented a recovery. *Krumm* v. *St. Louis, I. M. & S. Ry. Co.*, 71 Ark. 590. There are many other well considered cases which support this ruling. *Freeman* v. *Pere*

*Marquette Railroad,* 131 Mich. 544, 100 Am. St. Rep. 621 ; *Shamblin* v. *New Orleans Ry. Co.,* 114 La. 467 ; *Neville* v. *St. Louis Merchants Bridge Terminal Ry. Co.,* 158 Mo. 293 ; *Harris* v. *Hannibal Ry. Co.,* 89 Mo. 233, 58 Am. St. Rep. 111 ; *Felton* v. *Horner,* 97 Tenn. 579 ; *Norfolk Ry. Co.* v. *Ferguson,* 79 Va. 241 ; *Smith* v. *Richmond Ry. Co.,* 99 N. Car. 241 ; *Lusby* v. *Atchison, T. & S. F. Ry. Co.,* 41 Fed. 181 ; *Chicago, M. & St. P. Ry. Co.* v. *Carpenter,* 56 Fed. 451 ; *Wallace* v. *Western Ry. Co.,* 2 Am. St. Rep. 346 ; *Young* v. *Missouri Pac. Ry. Co.,* 84 S. W. 175 ; Hutchinson on Carriers (3d Ed.) 1217.

In this case the plaintiff stood up only a short time, but the doubt is whether there was any occasion for him to stand up at all. He had boarded the car and had taken his seat, but as the train started he says he got up either to shake hands with a friend, to wave a good bye to those he was leaving, or to take a last look at the improvements the company was making. There was evidence that he stood up while the slowly-moving train ran three or four car lengths, though plaintiff testified that he had only stood up a moment when the shock came which threw him down and injured him. He was an elderly man, and probably not so steady on his feet as a younger man, but if he had remained in his seat he would not have been injured. Under these facts Mr. Justice BATTLE and myself were first of the opinion that the presiding judge was justified in directing a verdict, but the other judges having taken a different view, we have reconsidered the matter, and concluded, with them, that, in view of the very short time the plaintiff remained on his feet, the question of whether he was guilty of negligence should have been submitted to a jury.

Judgment reversed, and cause remanded for a new trial.