ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

v. BRABBZSON.

Opinion delivered July 6, 1908.

1. APPEAL AND ERROR—REVIEW—SUFFICIENCY OF EVIDENCE.—In testing the sufficiency of evidence to support a verdict, the court must view the evidence in the strongest light favorable to the findings of the jury. (Page 112.)

2. CARRIERS—DUTY TO PASSENGERS ON FREIGHT TRAINS.—While a railroad company, undertaking to carry passengers on freight trains, owes to them the same high degree of care to protect them as if they were on passenger trains, yet the nature of the train and the necessary difference in its mode of operation must be considered, and the company is bound to exercise only the highest degree of care that is usually and practically exercised and consistent with the operation of a train of that nature. (Page 112.)

3. SAME—NEGLIGENCE IN OPERATION OF FREIGHT TRAIN.—Evidence that, after a freight train reached a station, a passenger went forward to alight, and that the train was started with a sudden and violent jerk, throwing the passenger down and injuring her, was sufficient to justify a finding that the railroad company was guilty of negligence. (Page 112.)

4. SAME—WHEN CONTRIBUTORY NEGLIGENCE QUESTION FOR JURY.—In an action for personal injuries received by plaintiff while a passenger on a freight train, where she was thrown down by a violent movement of the train while standing holding the door knob of the car, preparatory to alighting at her destination, the question whether she was negligent was properly left to the jury. (Page 112.)

5. DAMAGES—WHEN EXCESSIVE.—Where the evidence shows that plaintiff was thrown down, that her head, shoulder and back and one of her thumbs were hurt, that two of her teeth were loosened, and that she was confined to her bed two or three weeks, but suffered no permanent injuries, a verdict of $2,000 damages is excessive, but the error may be cured by a *remittitur* of one-half of the verdict. (Page 113.)

Appeal from Jackson Circuit Court; *Frederick D. Fulkerson*, Judge; affirmed with *remittitur*.

STATEMENT BY THE COURT.

This is an action instituted by an infant, suing by next friend, against the railway company for damages for personal injuries received while she was a passenger on a local freight train which carried passengers regularly. She was a passenger *en route* from Newport, Arkansas, to Tuckerman, and re-

ceived the alleged injuries complained of when she was about to debark from the train at her destination. It is alleged in the complaint that "upon the arrival of said train at Tuckerman, the same was stopped at the usual place for passengers to debark from said train, and the servant, agent and employee of defendant upon said train called out the name of the station, Tuckerman, whereupon the passengers on said train began to debark therefrom, and this plaintiff also started to get off said train, and when she had reached the door of the car in which she was riding the said train was again negligently and suddenly started, and pulled up a short distance, and was then negligently, recklessly and suddenly stopped with a jerk and jar; plaintiff, who was standing at the door holding to the knob to brace herself, not having time to again take her seat, was by said jerk and jar pitched out of the door on to the platform of said car, striking her head on the railing of the platform, and raising a contusion thereon, injuring her shoulder, and hurting her back and leg, and hurting her left ear, causing her to lose the hearing thereof, and mashing off thumb."

The answer denied each allegation of the complaint, and charged that plaintiff had been warned to keep her seat until the train reached its proper place for her to alight, and that she would be notified as to the proper time and place to alight from the train. It further charged that she assumed the risks incident to riding on a freight train; and further charged contributory negligence.

A jury trial resulted in a verdict in favor of the plaintiff for the sum of $2,000, and the defendant appealed.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

1. The evidence fails to make a case of negligence, but clearly shows negligence on part of plaintiff. A passenger on a freight train assumes the risk incident thereto and must take notice thereof; he must exercise ordinary and reasonable care to guard against injury, and must not take a position where he is likely to be injured by a sudden jerk, etc. 4 Elliott on Railroads, § 2553; 120 Ind. 549; 98 N. C. 449; 79 Va. 241; 99 N. C. 241; 71 Ark. 590; 32 C. C. A. 283, 412, 540; 6 *Id.* 643; 27 A. & E. R. Cases, 216; 52 Ark. 517; 38 Fed. 822; 14 Allen, 429; 107 Mo. 653; 18 Mo. App. 290; 41 *Id.* 432; 16 Col. 103;

46 Ark. 528; 71 *Id.* 590; 40 *Id.* 322; 72 N. W. 1112; 84 Ark. 181.

2. Railroads have the right to make reasonable rules for the safety of passengers. 4 Elliott on Railroads, 1576; 45 Ark. 263; 47 *Id.* 79; 49 *Id.* 357. Passengers must take notice of and obey these general rules. 4 Elliott on Railroads, 1576; 30 S. W. 547; 38 Kans. 507; 29 Ind. 232; 31 Ark. 50.

3. Court erred in instruction for plaintiff, and the verdict is excessive. *Reber* v. *Bond,* 38 Fed. 822, governs this case.

*O. W. Scarborough* and *Stuckey & Stuckey,* for appellee,

1. A passenger on a freight train assumes all risks, etc., *ordinarily* incident to operating a mixed train, and it was necessary for plaintiff to show something more than the ordinary jerk or jar, and this is what the court told the jury in instruction No. 1. 71 Ark. 590; 83 *Id.* 22.

2. She was not guilty of contributory negligence. That was a fact for the jury and properly left to it under the charge of the court. 79 Ark. 335; 83 *Id.* 22; 109 S. W. 295; 57 Ark. 436; 7 Am. & Eng. Enc. of Law (2d Ed.), 456.

3. The verdict is not excessive. There is no legal measure of damages for pain and suffering. 48 Ark. 396; 39 *Id.* 491. See, also, 25 Ark. 380; 83 *Id.* 437; 79 *Id.* 835; 47 *Id.* 497.

McCULLOCH, J., (after stating the facts). Appellant challenges the sufficiency of the evidence, and contends that a peremptory instruction should have been given.

The testimony introduced on behalf of appellee tends to show that when the train reached Tuckerman the caboose came to a standstill near a certain road crossing where it was accustomed to stop, or where it sometimes stopped (there being no regular stopping place for local freight trains), and all the passengers walked forward to the door preparatory to alighting, and some of them did alight at that time; that the train was then put in motion slowly and moved a very short distance when it came to a stop with a sudden and unusually violent jerk which threw appellee down, as described in the complaint, and inflicted the injuries complained of. She was standing at the door, holding to the door knob, when the injury occurred. There was also testimony to the effect that when the passengers went forward and reached the door the conductor, who was stand-

ing on the ground near the caboose, called out to them, telling them to stop, that the caboose would be pulled up to the crossing; that the train began moving just at that time, and appellee did not have time to take a seat before the violent jerk came and threw her down. Appellee testified that she did not hear the admonition of the conductor, and the evidence does not show that it was given so loud or that he was so close to her that she must have heard it. She testified that she arose from her seat and went forward because the other passengers did so, and that she did not have time, after the train began to move again, to take a seat before the jerk came. She was fourteen years old when the injury occurred.

The evidence of several witnesses tended to show that the jar caused by stopping the train the second time was sudden and an unusual and extraordinary one, even for a freight train.

The testimony of witnesses introduced by appellant tended to establish facts sufficient to exonerate the company entirely from the charge of negligence, but in testing the sufficiency of the evidence as a whole we must view it in the strongest light favorable to the findings of the jury.

We are of the opinion that the evidence made out a case of negligence sufficient to go to the jury, and that the peremptory instruction was properly refused.

It is well settled that, though a passenger riding on a freight train must be deemed to have assumed all the risks usually and reasonably incident to travel on such trains, yet, where the railroad company undertakes the carriage of passengers on freight trains, it owes such passengers the same high degree of care to protect them from injury as if they were on passenger trains. *Rogers* v. *Choctaw, O. & G. Rd. Co.,* 76 Ark. 520; *Pasley* v. *St. Louis, I. M. & So. Ry. Co.,* 83 Ark. 22.

But, as it is not practical to operate freight trains without occasional jars and jerks calculated to throw down careless and inexperienced passengers standing in the car, "the duty of the company is therefore modified by the necsssary difference between freight and passenger trains and the manner in which they must be operated; and, while the general rule that the highest practicable degree of care must be exercised to protect

passengers holds good, the nature of the train and necessary difference in its mode of operation must be considered, and the company is bound to exercise only the highest degree of care that is usually and practically exercised and consistent with the operation of a train of that nature." 4 Elliott on Railroads, § 1629.

If the sudden stopping of the train, at the time and under the circumstances it is shown to have occurred, was accompanied by a jerk or jar as violent and extraordinary as is described by some of the witnesses, then the servants of the company were guilty of culpable negligence, which rendered the company liable for damages to a passenger injured thereby. Appellee did not assume the risk of danger from such acts of negligence, and whether or not she was guilty of contributory negligence was a question for the jury. *Pasley* v. *St. Louis, I. M. & So. Ry. Co., supra; St. Louis, I. M. & So. Ry. Co.* v. *Harmon,* 85 Ark. 503.

We conclude that there was sufficient evidence to sustain a verdict for damages, and that the case was submitted to the jury upon correct instructions. We are of the opinion, however, that the amount of the verdict is excessive.

The evidence shows that appellee was pitched forward through the door of the caboose, and that she fell on the platform, her head striking the railing as she fell. Her head, shoulder, back and one of her thumbs were hurt, and two of her teeth were loosened. She was confined to her bed two or three weeks. A physician prescribed treatment once for her injuries, her shoulder was swollen, and she suffered considerable pain. At the time of her trial, about a year later, she still complained of the trouble in her back and shoulder, and that her hearing was defective. There is nothing to indicate from the character of the injury that it was calculated to cause a defect in her hearing, and a physician who treated her both before and after the injury, who saw her and prescribed for her the morning of the day on which she was injured, testified that the defect in her hearing was probably caused by catarrhal trouble with which she was afflicted before and after the injury, and that the continued pain in her back was attributable to disease of the kidneys with which she had been afflicted before the injury, and for which he was treating her at the time. There is no tangible

or substantial evidence that the continued pain in her back and shoulder or that the defect in her hearing was caused by the fall, while on the contrary there is positive and uncontradicted evidence that these troubles were attributable to other causes. The jury had no right to speculate upon the possibility of these injuries being caused by the fall when there was no evidence directly to that effect.

The result is that we see no evidence of a permanent injury to appellee from the fall. It was·of a temporary nature, and, according to the evidence, the elements of damage were confined to pain and suffering for a period of two or three weeks. The shock at the time of the fall must have been quite severe, but the suffering for the next two or three weeks is not shown to have been acute.

We think that an assessment of damages at any sum over $1,000 is excessive, but the evidence sustains a recovery of that amount. If the jury had assessed the damages at that or a less sum, we would let it stand. *St. Louis, I. M. & So. Ry. Co.* v. *Snell,* 82 Ark. 61. If, therefore, appellee will, within fifteen days, remit the amount of damages down to $1,000, the judgment will stand affirmed; otherwise the judgment will be reversed, and the cause remanded for a new trial.

Hill, C. J., (dissenting.) This case presents a close question as to right of plaintiff to go to the jury on the facts, and the verdict is grossly excessive as pointed out in the opinion of the court.

It is thoroughly established that the court may affirm a judgment where the damages are excessive after the excess has been remitted, but that power should be sparingly exercised, and only where there is some substantial basis for the amount sustained, and some tangible way of reaching a conclusion as to how much is excessive. In cases of damages for a death loss with expectancy of life estimated and present value of revenue calculated, an approximation may be made as to the probable pecuniary loss; but even this contains many elements of speculation. In cases of compensation for purely mental or physical suffering it seems to me that where the verdict is so excessive that it appears to "have been given under the influence of passion and prejudice," a new trial should be granted pursuant to the 4th paragraph of section 6215, instead of reducing the amount here.