ARKANSAS SOUTHWESTERN RAILROAD COMPANY *v.* WINGFIELD.

Opinion delivered February 28, 1910.

1. CARRIERS—OPERATION OF FREIGHT TRAINS.—In the operation of freight trains railway companies are held to exercise only the highest degree of care that is usually and practically exercised and consistent with the operation of a train of that nature. (Page 79.)

2. EVIDENCE—COMPETENCY OF EXPERT.—A graduate of a medical school who is a physician of six years' experience, although he has had no actual experience with respect to the subject of investigation, is competent to express an opinion as an expert on a matter pertaining to his profession based on knowledge derived from reading books on the subject. (Page 79.)

Appeal from Pike Circuit Court; *James S. Steel,* Judge; affirmed.

*Kinsworthy & Rhoton,* and *James H. Stevenson,* for appellant.

1.   The third instruction given at appellee's request involves a contradiction of ideas, in stating to the jury that in taking passage on a mixed train appellee "assumed the risk of necessary and usual jolts and jars" incident to the operation of such a train, and then proceeding to tell them that the appellent was, nevertheless, held to the exercise "of the same high degree of care *in the handling* of said train as if she were riding on a regular train," etc.   Such an instruction destroys all distinction between the handling of the two classes of trains, and nullifies the declaration that plaintiff by taking passage on this train assumed any risk whatever.   87 Ark. 109; 76 Ark. 520; 83 Ark. 22; 71 Ark. 590.

2.   The fourth instruction errs in charging the jury that they could consider the mental pain and anguish endured by the plaintiff on account of the injury.   There is no evidence of any mental pain and anguish.   63 Ark. 177; 65 Ark. 222; 70 Ark. 441; 63 Ark. 387; 76 Ark. 348; 77 Ark. 20; 71 Ark. 351.

3.   The testimony of Dr. Buchanan as to the effect railway accidents have upon the nerves was inadmissible.   He qualifies as a physician, but not as an expert on nervous diseases.   He admits that he has had no experience, and his testimony is a mere rehearsel of what Dr. Bailey and others have said, specially looked up for this case.   There is no showing of that "careful and discriminating study" resulting "in the formation of a definite opinion" which would entitle him to "respect as an expert." 64 Ark. 523, 533; Lawson, Exp. and Op. Ev. 247; *Id.* 202.

*McRae & Tompkins,* and *D. L. McRae,* for appellee.

1.   There is no error in the third instruction.   In the first instruction given the rule was stated to be the highest degree of care consistent with the practical running of the train.   The third noted the difference between regular passenger and mixed trains.   87 Ark. 101.

2.   Where there is serious bodily injury, the law implies mental suffering.   The evidence is ample to support a finding of mental anguish in this case.   175 Ill. 401, 42 L. R. A. 199; 11 Allen, 73; 64 Ark. 538, 546; 1 Sutherland on Damages 706; 13 Cyc. 136, notes 95 and 98.

3. The testimony of Dr. Buchanan was competent. 64 Ark. 532.

BATTLE, J. This is an appeal by the Arkansas Southwestern Railroad Company from a judgment against it in favor of Mrs. W. H. Wingfield for injuries alleged to have been received by her from a sudden jolt caused by the coupling of a mixed freight and passenger train in which she had taken her seat as a passenger and was sitting at the time of the injury.

The facts as shown by the evidence in the trial of the action were substantially as follows: "In January, 1908, the appellee took passage at Smithton, Arkansas, upon a mixed train on appellant's road. Two seats were turned facing each other, and she and her husband sat in one of them. While waiting in the yards, the engine came back with such unusual force as to throw her forward against the seat in front and back against the seat in which she was sitting. She was so badly injured that she told the conductor at the time: 'You have broken my back.' She laid down and become very sick at her stomach, and when she arrived at home she was practically carried from the train to her home, about 200 yards distant. She used ordinary home remedies for a few days; and as she grew constantly worse she sent for a doctor. She had always been a healthy woman. Had worked in the field. Since the injury, she has had to walk slowly, and if her heel slips off something, as for instance the door board, she will fall, and has to be picked up and put in bed. She is a nervous wreck. The normal pulse beat is 72 to 75. Her pulse rate is 108 sitting down; lying down 100, and after walking twelve feet 128. There is a tremor of the hand and a twitch of the muscles of the eyelids. The muscles of the back were sprained and rigid and protude. Her kidneys are affected. These symptoms and others have continually grown worse, resulting in traumatic neurasthenia, a weakened nervous condition. The doctors testified that at her age she would probably grow worse, instead of better. After the injury she quit work altogether."

In the trial Dr. Buchanan in behalf of the appellee, testified that he had been practicing medicine for six years; that he was a graduate of the Arkansas Medical Department of the

University of Arkansas, and had taken two post graduate courses at the New York Polyclinic; and had examined Mrs. Wingfield. Over the objection of appellant he was asked, "From what you know, from your medical education and your observation, state whether or not there is anything in railway accidents that peculiarly predisposes sufferers from such accidents to this nervous affection?" He answered: "I think there is something in a railroad accident. From the standpoint of experience I don't know very much about it. I get my knowledge all from the medical books, and I refer to my books and to the authorities I have read, and they bear me out in saying that there is something to a railroad accident as well as in other accidents. Not only railroad accidents, but street car accidents, runaways, etc., that has a tendency to upset the nervous system in different ways."

Over the objections of the appellant the court instructed the jury as follows:

"3. You are told that, while the plaintiff in taking passage upon a mixed train assumed the risk of necessary and usual jolts and jars, this did not relieve the railroad company from exercising the same high degree of care in the handling of its train as if she was riding on a regular passenger train, to avoid injuring her. The risk of usual jolts and jars assumed by plaintiff is the risk incident to the mode of conveyance, and does not relax the rule as to the high degree of care to be exercised by the servants of the defendant to avoid injuring passengers. So in this case, if you believe that the plaintiff was without fault and would not have been injured if the defendant's servants had exercised such high degree of care, your verdict should be for the plaintiff."

"4. If you find for the plaintiff, you will, in assessing her damage, take into consideration her age and condition in life, the injury sustained by her, and the physical and mental pain and anguish endured by her on account of the injury, together with such as she will necessarily endure in the future, resulting from her injury, if any, together with all other facts and circumstances in the case, and assess her damages at such sum as you believe from the evidence will fully compensate her for her injury."

In *St. Louis, Iron Mountain & Southern Railway Company* v. *Brabbzson,* 87 Ark. 109, the duty of a railroad company to a passenger riding on a freight train is defined as follows:

"It is well settled that, though a passenger riding on a freight train must be deemed to have assumed all the risks incident to travel on such trains, yet, where the railway company undertakes the carriage of passengers on freight trains, it owes to such passengers the same high degree of care to protect them from injury as if they were on passenger trains. *Rodgers* v. *Choctaw, O. & G. Rd. Co.,* 76 Ark. 520; *Pasley* v. *St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 22.

"But, as it is not practical to operate freight trains without occasional jars and jerks, calculated to throw down careless and inexperienced passengers standing in the car, 'the duty of the company is therefore modified by the necessary difference between freight and passenger trains and the manner in which they must be operated; and, while the general rule that the highest practical degree of care must be exercised to protect passengers holds good, the nature of the train and necessary difference in the mode of operation must be considered, and the company is bound to exercise only the highest degree of care that is usually and practically exercised and consistent with the operation of a train of that nature. 4 Elliott on Railroads, § 1629." *Arkansas Central Railroad Co.* v. *Janson,* 90 Ark. 494.

As we understand instruction numbered 3, copied in this opinion, it is in accord with this statement of the law, and was properly given to the jury by the court.

Appellant objected to instruction numbered 4, because it told the jury, in assessing the damages sustained by appellee, to take into consideration "the mental pain and anguish endured by her on account of the injury." It says there was no evidence of such pain or anguish. We do not think that the evidence sustained this contention. The facts stated in this opinion prove the contrary, and the suffering of mental pain and anguish as necessarily incident to her condition.

The question asked Dr. Buchanan and his answer to the same were competent evidence. He was a graduate of a medical school, and a physician of six years' experience. Although he had no actual experience with respect to the subject of in-

vestigation, yet he can express an opinion as an expert on a matter pertaining to his profession, based upon knowledge derived from reading books upon the subject. It is for the jury to determine what value his opinion is entitled to under the circumstances, and to give it such weight as they think it deserves. *Green* v. *State,* 64 Ark. 532.

The judgment of the circuit court is affirmed.