## St. Louis, Iron Mountain & Southern Railway Company v. Hartung.

### Opinion delivered May 23, 1910.

1. CARRIERS—DUTY TO PASSENGERS ON MIXED TRAINS.—Though passengers on a mixed freight and passenger train are held to have assumed all the risks incident to travel on such trains, yet where the railway company undertakes the carriage of passengers on such a train it owes to them the same high degree of care to protect them from injury as if they were on a regular passenger train. (Page 223.)

2. SAME—DUTY TO HOLD CARS.—A carrier of passengers on mixed trains is required to furnish reasonably safe means of entering the car and to hold the car in a reasonably safe manner for a reasonable time to permit those who wish to enter to do so with safety. (Page 223.)

3. SAME—REASONABLE TIME TO BOARD CAR.—In determining whether a reasonable time has been afforded to a passenger in getting on board a train the particular circumstances of each case and of the passenger should be considered, such as his physical ability, his incumbrance with baggage, and his being accompanied by those dependent on him for attention. (Page 223.)

4. SAME—CONTRIBUTORY NEGLIGENCE.—Where plaintiff, a passenger on defendant's road, had entered a passenger coach to deposit some bundles, and had returned to the platform to get her infant child, and while there was injured by a sudden jar of the train, negligently caused by defendant while passengers were still entering the coach, it was a question for the jury whether she was guilty of contributory negligence in being on the platform. (Page 223.)

5. INSTRUCTION—GENERAL OBJECTION.—An instruction that "railroad companies are required, in the carriage of passengers, to use the utmost care and foresight, and are held responsible for even a small degree of negligence causing an injury to a passenger, and are required to exercise the highest degree of practicable care, diligence and skill in the operation of their trains to prevent injury to passengers," if subject to verbal criticism, cannot be reached by general objection. (Page 225.)

6. CARRIERS—DUTY TO PASSENGERS BOARDING TRAIN.—A railway company operating a mixed freight and passenger train which has just drawn up at a station for the purpose of receiving passengers is bound to anticipate the presence of passengers going on board of the train and to exercise care not to injure them. (Page 225.)

7. SAME—CONTRIBUTORY NEGLIGENCE IN STANDING ON PLATFORM.—A passenger on a mixed freight and passenger train is not negligent as matter of law in standing upon the platform, provided the standing is not so protracted or uncalled for as to become unnecessary or imprudent. (Page 225.)

8.  DAMAGES—MENTAL PAIN.—Where the testimony showed that plaintiff suffered severe physical injuries, it was not error to instruct the jury that she could recover for mental pain suffered by her as an incident to her physical suffering.  (Page 226.)

9.  SAME—EXCESSIVENESS.—Where the evidence tended to prove that by defendant's negligence plaintiff, a delicate woman, was violently thrown against an iron brake and railing, that her breast was injured, her skin torn from her arm, and the muscles of her shoulder badly wrenched, and that she suffered pain for a year and a half, a verdict allowing her $2,500 was not excessive.  (Page 227.)

Appeal from Phillips Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, P. R. Andrews* and *Jas. H. Stevenson,* for appellant.

The evidence does not sustain the verdict.  101 Mo. App. 52.  A passenger riding on a freight train assumes all the risks of damages incident thereto.  87 Ark. 109; 76 Ark. 520; 83 Ark. 22.  And the company is bound to exercise only the highest degree of care.  4 Elliott on Rds., § 1629; *Ark. S. W. Ry.* v. *Wingfield,* 94 Ark. 75; 90 Ark. 494.  The passenger assumes the risk of the increased danger.  195 Mo. 104; 165 Mo. 612; 144 Ill. 261; 84 Mo. App. 498.  In instructing the jury, it is error for the court to assume a fact in issue as proved.  24 Ark. 540.  Every instruction should be hypothetical.  14 Ark. 520; 31 Ark. 684.

It is error to point out what particular inference may be drawn from the facts in proof (49 Ark. 147), or to tell them what weight should be given to the evidence.  23 Ark. 115; 58 Ark. 108; 37 Ark. 580; 45 Atl. 161; 88 Ark. 7; 82 Vt. 42; 71 Atl. 836; 118 S. W. 612; 115 S. W. 85; *Id.* 615; 14 L. R. A. (N. S.) 1118.  It is error to submit to the jury an issue upon which there is no evidence.  80 Ark. 260; 89 Ark. 147.  The verdict is excessive.  87 Ark. 109.

*J. M. Jackson* and *Bevens & Mundt,* for appellee.

Carriers of passengers are held responsible for the slightest negligence.  55 Ark. 254; 34 Ark. 625; 60 Ark. 556; 90 Ark. 498; 76 Ark. 520; 83 Ark. 22; 87 Ark. 109; 57 Ark. 418; 87 Ark. 602.  All grounds of objection not specified are waived. 87 Ark. 101; 65 Ark. 371; 30 Ala. 363.  Appellant's general objection to plaintiff's fourth instruction was not sufficient.  73.

Ark. 531; *Id.* 595; 65 Ark. 255; 87 Ark. 607.  Standing is not, under all circumstances, negligent.  79 Ark. 337; 83 Ark. 25; 85 Ark. 503; 87 Ark. 572; *Id.* 109; *Id.* 101.  Appellant cannot complain of an error in an instruction when the same error was in an instruction given at its request.  88 Ark. 175; 69 Ark. 145; 67 Ark. 539; 75 Ark. 198; 88 Ark. 146; 87 Ark. 399.

FRAUENTHAL, J.  This was an action instituted by Mrs. Grace Hartung, the plaintiff below, against the St. Louis, Iron Mountain & Southern Railway Company to recover damages on account of personal injuries which she alleged she sustained while a passenger upon one of defendant's trains.  The defendant ran a mixed train from Watson to Helena, two stations upon its line of railroad, in which it carried passengers and freight. The testimony on the part of the plaintiff tended to prove that she had paid her fare, and was entering defendant's train as a passenger at Watson for Helena.

In the train were two passenger coaches, and some freight cars were being switched for the purpose of putting them in the train.  The train was preparing to leave, and passengers were entering the train.  The plaintiff was accompanied by her baby, which was in the arms of her husband as she first entered the coach.  She deposited some bundles upon the seat and then returned at once to the platform of the coach to take the baby from her husband.  As she was thus standing on the coach platform, the engine backed three flat cars loaded with timber against the passenger coach with great and unnecessary force and violence, so that, as one of the witnesses testified, it almost lifted the end of the coach off the track.  By the great jar and jolt the plaintiff was thrown across the coach platform on which she was standing and against the brake beam and guard rail of the next car, and thereby she was severely injured.

Upon the trial of the case the jury returned a verdict in favor of the plaintiff for $2,500; and from the judgment entered thereon the defendant has appealed to this court.

It is urged by counsel for defendant that, inasmuch as this was a mixed train, the plaintiff was guilty of negligence which contributed to the injury by going on the coach platform after entering the coach; and that on this account she is not entitled to recover, as a matter of law.  But the fact that

this was a mixed train did not alter or diminish the duty, which was required of defendant as a carrier, to stop its train for such a reasonable time as would permit passengers to go on board with safety. Where the carrier accepts passengers on such mixed trains, the same rules of law will apply to it for the exercise of care in protecting its passengers from injury as apply to it when receiving them on regular passenger trains. In the case of *St. Louis, Iron Mountain & Southern Railway Company* v. *Brabbzson,* 87 Ark. 109, it is said: "It is well settled that, though a passenger riding on a freight train must be deemed to have assumed all the risks incident to travel on such trains, yet, where the railway company undertakes the carriage of passengers on freight trains, it owes to such passengers the same high degree of care to protect them from injury as if they were on passenger trains." *Pasley* v. *St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 22; *Arkansas Central Railroad Co.* v. *Janson,* 90 Ark. 494; *Arkansas S. W. Ry. Co.* v. *Wingfield,* 94 Ark. 75.

The carrier of passengers on mixed trains is required, like carriers on regular passenger trains, to furnish reasonably safe means of entering the car and to hold the car in a reasonably safe manner for a reasonable time to permit those who wish to enter to do so with safety. If therefore, while the passenger is getting on the car, the train is negligently started, or so negligently handled by permitting other cars to be thrown against it with such violence that the passenger is injured, the carrier will be liable. The time that is allowed a passenger to enter a train depends to a great extent on the particular circumstances of each case and of the passenger; the physical ability of the passenger, his incumbrance with baggage and his being accompanied by those who are dependent upon him for attention may all be taken into consideration in determining whether a reasonable time has been afforded the passenger in getting on board the train. 2 Hutchinson, Carriers (3d Ed.), § 1111; 6 Cyc. 613.

In the case at bar the plaintiff was accompanied by her infant child, and she had come to the coach platform to take it from the arms of the father, who was standing on the depot platform. Other passengers were at the time entering the train, and all of them had not entered when the injury occurred. It became a question for the jury to say under the testimony in the

case whether the plaintiff went to the car platform without unreasonable delay, and whether she remained on the platform a reasonable time to get her child. If she acted with reasonable diligence to do this, then it cannot be said as a matter of law that she was guilty of contributory negligence which would defeat her right to recover.

The court gave a number of instructions to the jury, both at the request of the plaintiff and of the defendant. These instructions fully told the jury that the plaintiff assumed all the ordinary risks and hazards that were incident to the travel on a mixed train, and properly declared to them the care that the law required the plaintiff to exercise as a passenger on such train. Amongst other instructions it gave the following at the request of plaintiff:

"3. You are instructed that railroad companies are required in the carriage of passengers to use the utmost care and foresight, and are held responsible for even a small degree of negligence causing an injury to a passenger, and are required to exercise the highest degree of a practicable care, diligence and skill in the operation of their trains to prevent injury to passengers."

It is urged that the court erred in giving this instruction because it was not applicable to the carrier of passengers on a mixed train. But we do not think this contention is correct. The duty of a carrier of passengers on a freight or mixed train is thus stated in the case of *St. Louis Southwestern Ry. Co.* v. *Cobb,* 89 Ark. 82: "The passenger assumes the risks and hazards that are incident to the operation of a freight train; but the general duty of the carrier to use the utmost care for the safety of the passengers is the same. Freight trains and passenger trains are operated differently, but a freight train carrying passengers cannot be operated carelessly without subjecting the company to liability, any more than a passenger train. * * * In the operation of a freight train the operatives can no more overlook the due care of their passengers than can the operatives of a passenger train." See also *Rodgers* v. *Choctaw, O. & G. Rd. Co.,* 76 Ark. 520; *Pasley* v. *St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 82; *St. Louis, I. M. & S. Ry. Co.* v. *Brabbzson,* 87 Ark. 109; *Arkansas Central Rd. Co.* v. *Janson,* 90 Ark. 498.

If there was any defect in the verbiage of the instruction, the defendant should have called the court's attention thereto by a specific objection, so that it could have been corrected in that particular. *St. Louis, Iron Mountain & S. Ry. Co.* v. *Richardson,* 87 Ark. 602.

It is urged that the court erred in giving the following instruction: "4. You are instructed that a railway company operating a mixed train which carries passengers and which has drawn up to a station for the purpose of receiving passengers is bound to anticipate the presence of passengers aboard the passenger car and to exercise care not to injure them."

Under the circumstances of this case we do not think that any error was committed by giving this instruction. The passenger coaches were stopped at the depot, and passengers were at the time entering the train. Preparations were being made for the departure of the train, and the trainmen were bound to anticipate the presence of the passengers going on board of the train under these circumstances. *St. Louis. I. M. & S. Ry. Co.* v. *Harmon,* 85 Ark. 503; *St. Louis, I. M. & S. Ry. Co.* v. *Gilbreath,* 87 Ark. 572.

It is urged that the court erred in giving the following instructions:

"5. You are instructed that in the operation of mixed trains jars of great, unusual and unnecessary violence would be evidence of negligence on the part of the trainmen, and you are further instructed that, as a matter of law, it is not necessarily negligence for a passenger to be standing on a mixed train, but on the other hand one has a right to so stand, provided the standing is not so protracted or uncalled-for that it becomes unnecessary or imprudent."

The principle of law set out in this instruction is, we think, correct. A passenger is not guilty of negligence *per se* to stand up in a mixed train. There are circumstances which often arise that justify a passenger in standing up. In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Gilbreath,* 87 Ark. 572, it is said: "This court has repeatedly held that it is not necessarily negligence for a passenger on a freight train to stand up, but that it is generally a question for the jury to decide under the circumstances disclosed in each case." See also *St. Louis, I. M. & S. Ry. Co.* v. *Billingsley,* 79 Ark. 337; *Pasley* v.

*St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 22; *St. Louis, I. M. & S. Ry. Co.* v. *Harmon,* 85 Ark. 503; *St. Louis, I. M. & S. Ry. Co.* v. *Richardson,* 87 Ark. 101; *St. Louis, I. M. & S. Ry. Co.* v. *Brabbzson,* 87 Ark. 109.

Nor do we think the instruction is otherwise prejudicial. We do not think that the fair meaning of the language would indicate that it assumes the existence of the facts therein recited, but that it is in effect hypothetical.

In other instructions given on behalf of the defendant the court had told the jury fully as to what acts would have constituted contributory negligence on the part of the plaintiff by standing up; and the effect of this. instruction was only to tell the jury what acts in that regard would not as a matter of law constitute such contributory negligence. Its effect was still to leave to the jury the province to determine the facts and whether or not under the circumstances of this case the plaintiff was guilty of contributory negligence in standing up. Inasmuch as the defendant had requested and obtained the giving of instructions which singled out facts on this issue, we do not think that any prejudicial error was committed by the court in this regard in this instruction.

It is urged by the defendant that the court erred in instructing the jury that the plaintiff could recover for mental pain and anguish as an element of damage. It claims that the evidence shows an entire absence of mental suffering. We do not think that this contention is correct. The evidence shows that the plaintiff, a delicate woman, was thrown with great force and violence across the end of the car and against the iron brakes and rails. Her breast was injured, the skin was torn from her arm from the wrist to the elbow and the muscles of her shoulder were badly wrenched. She suffered physical pain at the time, and has continued to suffer such pain for more than one and one-half years after the injury. A physician of defendant waited on her immediately after the injury, and later she required the attention of another physician. She suffered such rheumatic pains, which were caused by the injury, that she consulted a specialist; and with all the medical assistance which she obtained she still endures pains that are a result of the injury. Mental suffering is so intimately connected with physical suffering that mental pain and anguish was necessarily inci-

dent to her condition from the injury. *St. Louis, I. M. & S. Ry. Co.* v. *Taylor*, 84 Ark. 46; *Arkansas S. W. Ry. Co.* v. *Wingfield*, 94 Ark. 75.

There was evidence in the very nature, extent and circumstances of the injury which was sufficient to sustain an instruction relative to mental pain as an element of the damages. And under the testimony that was adduced in this case as to the nature and extent of the injury we cannot say that the verdict of $2,500 was excessive.

The judgment is affirmed.