St. Louis, Southwestern Railway Company *v.* Wyman.

Opinion delivered July 5, 1915.

1. Instructions — defects — specific objections. — Where a party claims the instructions given by the court were too restricted to properly submit the issue, it becomes the duty of the party complaining to point out to the trial court the particulars wherein it is claimed that the instructions are defective.

2. Instructions—improper form—duty to ask proper instruction.— Where appellant desired certain instructions to be put in more accurate form than that used by the court, it is his duty to present a correct prayer for instruction on the issue involved, or to point out specific objections thereto.

3. CARRIERS—INJURY TO PASSENGER ON MIXED TRAIN—CONTRIBUTORY NEG-
LIGENCE.—In an action for damages received by plaintiff, while a
passenger on a mixed train, caused by a sudden jerk, *held*, the in-
structions taken together properly submitted the issue of contribu-
tory negligence to the jury.

4. CARRIERS—DUTY TO PASSENGER ON MIXED TRAIN.—In the operation of
mixed trains, a railroad company owes the same duty of care to
its passengers as in the operation of a passenger train, and the
company will be liable for a negligent handling of the same.

5. CARRIERS—DUTY TO PASSENGERS ON MIXED TRAIN.—Railroad compa-
nies owe to passengers on mixed trains the duty to exercise only
such care, skill and diligence as is reasonably consistent with the
transportation of passengers thereon, and a passenger on a mixed
train assumes the risk incident to the starting and stopping of the
train, when done with reasonable care.

6. CARRIERS—DUTY TO PASSENGER—GETTING UP BEFORE TRAIN STOPPED.—
It is a question for the jury, whether a passenger on a mixed train
was guilty of contributory negligence in leaving his seat before the
train stopped, although there was a notice in the car warning him
to remain seated until the train stopped.

7. CARRIERS—MIXED TRAIN—LEAVING SEAT BEFORE STOP—CONTRIBUTORY
NEGLIGENCE.—A passenger on a mixed train is guilty of contribu-
tory negligence, where he arises from his seat before the train stops
and stands in the car an unreasonable length of time, there being
a notice posted in the train warning passengers not to leave their
seats before the train stopped.

8. INSTRUCTIONS—ABSTRACT INSTRUCTIONS.—The trial court should re-
fuse to instruct on a point not presented by the evidence.

9. INSTRUCTIONS—INSTRUCTION COVERED BY THOSE GIVEN.—In an action
for personal injuries received by the operation of a mixed train
upon which plaintiff was a passenger, it is not error to refuse to
instruct the jury that plaintiff could not recover if the injury was
caused by the ordinary operation of the train, when the court had
already instructed the jury, that plaintiff assumed the risks neces-
sarily incident to the operation of mixed trains.

10. DAMAGES—AMOUNT—PERSONAL INJURIES.—In an action against a
railroad company for damages growing out of personal injuries re-
ceived by the sudden jerk of a train, when plaintiff received inju-
ries to his back and head, fractured his pelvis, dislocated his hip
and was confined to his bed five weeks suffering great pain, a ver-
dict of $1,750 will not be held to be excessive.

Appeal from Monroe Circuit Court; *Thomas C.
Trimble*, Judge; affirmed.

STATEMENT BY THE COURT.

The appellee instituted this action against the appellant for damages for personal injuries. He alleged that he was a passenger on appellant's train from Brinkley to Clarendon. That upon arriving at Clarendon, the train came to a stop, and that while standing in the aisle waiting for another passenger ahead of him to get off, the defendant's employees caused the train to be jerked and started with such force that plaintiff was thrown violently backwards and received severe injuries to his back and thigh. The answer denied the material allegations of the complaint and set up contributory negligence on the part of the appellee.

The appellee testified that he was a passenger on appellant's mixed freight and passenger train from Brinkley to Clarendon. That some one hallooed out "Clarendon;" that he remained in his seat until the train "came to a dead stop," and then got up and went as far as the last seat, then the bump came that threw him ten feet or more; he fell on his grip; his head hit the side of the seat; he fractured his pelvis and dislocated his hip. He didn't discover that he was seriously hurt until he had gone up to the hotel and had called on five or six merchants. Appellee was a drummer. He then details the expense to which he was put. He stated that the movement of the train at the time of his injury was very extraordinary. Other witnesses testified, corroborating the testimony of the appellee to the effect that the train had stopped before he arose from his seat, and that it gave a sudden jerk and appellee fell; that the jerk was a hard one. One of the witnesses stated that the train moved something like half a car-length.

On behalf of the appellant, witness Donaldson testified that he was on appellant's train at the time that appellee was injured; that appellee was standing. He was asked this question: "Was Mr. Wyman standing?" And answered, "Well, I was standing before he was." He further testified that the train had not been stopped before witness arose to depart. The train stopped first at

the water tank. The second stop was right at the depot. As they got into town, witness got up and was standing with his hand holding to the back, of the seat. Wyman was standing on the opposite side. Witness was waiting for the jar to come, and when it came, Wyman was thrown back and several parties rushed up to him, thinking that he was hurt. When the train stopped for the station is the time when Wyman fell. The witness further stated that the jar on this occasion was not any more unusual nor any harder than "what is ordinary on freight trains."

The conductor testified that they stopped for water at Clarendon, and after that they proceeded to the depot. The train pulled down and made a stop for the passengers to get out. The train did not make a second stop for passengers to alight. The coach was provided with air brakes and the air was connected. When the train stopped, and the air was released, there was a little bit of slack. There were sixteen cars in the train and the slack would amount to four or five inches per car. There was a sign in the car in large letters informing all persons to keep their seats until the train came to a full standstill.

The court gave the following instructions at the instance of appellee:

"No. 1. You are told that, while the plaintiff, in taking passage upon a mixed train assumed the risk of necessary and usual jolts and jars, and this did not relieve the railroad company from exercising the same high degree of care in the handling of its train as if he was riding on a regular passenger train to avoid injuring him. The risk of usual jolts and jars assumed by plaintiff is the risk incident to the mode of conveyance, and does not relax the rule as to the high degree of care to be exercised by the servants of the defendant to avoid injuring passengers, so, in this case, if you believe that the plaintiff was without fault and would not have been injured if the defendant's servants had exercised such high degree of care, your verdict would be for the plaintiff."

"No. 2. You are instructed that while a passenger riding upon a freight train assumes the risks and hazards

that are incident to the operation of a freight train, yet it is the general duty of the carrier to use due care for the safety of the passengers and freight trains carrying passengers can not be operated carelessly without subjecting the company to liability any more than a passenger train, and the operatives in charge of a freight train can not any more overlook the due care of their passengers than can the operatives of a passenger train, and, although plaintiff in this case was a passenger upon a freight train, yet, if you find from the evidence that defendant's operatives in charge of said train failed to use due care for plaintiff's safety or negligently or carelessly operated said train or moved the caboose connected therewith in which plaintiff was a passenger, and that by reason thereof he was injured, your verdict should be for the plaintiff.''

Appellant objected generally to the giving of each of these instructions, and duly saved its exceptions.

The court refused the following prayers for instruction by appellant:

''No. 1.  The jury are instructed to return a verdict for the defendant.''

''No. 2.  You are instructed that it is the duty of passengers traveling upon freight trains or mixed trains to maintain their seats until the train shall arrive at a station and come to a full stop before arising to their feet for the purpose of getting off, and if you find from the evidence in this case that the plaintiff arose to his feet before the train upon which he was injured came to a full stop and he was standing up before the train stopped, and was thrown by the checking of the train or stopping of same, then your verdict should be for the defendant.''

''No. 4.  The jury are instructed that if they find from the testimony that the defendant brought its train to a standstill and that the plaintiff immediately thereafter arose to depart from said train, and while he was standing upon his feet, the train moved by reason of its inherent construction, that is, by reason of a slack of the train, without the engineer making any attempt to move

the train, and that the accident resulted from a slack or voluntary movement of the train after it had stopped, then the defendant is not liable."

The court granted appellant's prayer No. 3, which is as follows:

"No. 3. The jury are instructed that railway companies in the transportation of passengers upon freight or mixed trains are only required to exercise such care and skill and diligence as is reasonably consistent with the transportation of passengers upon mixed trains, as they can not in the nature of things exercise the same care in stopping and starting mixed trains as they can passenger trains, and whenever a passenger embarks upon a mixed train, he assumes the risks incidental to the stopping and starting of such trains, provided the carrier exercises all care and skill that is reasonably consistent in operating its trains."

The jury returned a verdict in favor of the appellee for $1,750, and from a judgment in its favor for that sum this appeal has been duly prosecuted. Such other facts as may be necessary will be stated in the opinion.

*S. H. West* and *J. C. Hawthorne,* for appellant.

1. There was a sign posted in the car warning all passengers to remain seated until the train stopped. Plaintiff violated this warning and was injured. The company is not liable. 97 Ark. 507; 87 *Id.* 101, 109, 572; 83 *Id.* 22; 79 *Id.* 335; 93 *Id.* 240; 95 *Id.* 220; 74 *Id.* 31; 71 *Id.* 590.

2. The court erred in giving and refusing instructions. 57 Ark. 517, 287; 99 *Id.* 366; 52 *Id.* 248.

*G. Otis Bogle* and *Harry H. Myers,* for appellee.

1. Appellee was a regular passenger and did not leave his seat until the train stopped. He was injured by a sudden jerk, which is *prima facie* evidence of negligence. Kirby's Dig., § 6773; 83 Ark. 214; 103 S. R. 603; 73 *Id.* 543; 63 Ark. 636. As to risks assumed by passengers, see 98 Ark. 82. The rule as to due care is the same as to freight, mixed and passenger trains. 76 Ark. 520;

*83 Id.* 22; 87 *Id.* 109; 90 *Id.* 494; 95 *Id.* 220; 94 *Id.* 75; 93 *Id.* 119; 94 *Id.* 126; 105 Ark. 269; 52 Ark. 517.

Passengers must have sufficient time to alight with safety. 6 Cyc. 612; 98 Fed. 963; 147 U. S. 571; 101 Ark. 183; 73 *Id.* 548. Where a passenger exercising due care and diligence in alighting, is injured by a sudden jerk of the train, the carrier is liable. 84 S. W. 175; 88 S. W. 767; 96 Ark. 339; 102 *Id.* 533; 87 *Id.* 581-602; 105 Ark. 22; 87 Ark. 101. There is no error in the instructions, and the verdict is sustained by the evidence. 86 Ark. 587; 88 *Id.* 12; 90 *Id.* 108.

Wood, J., (after stating the facts). (1-3) I. The appellant contends that the effect of the instructions numbered 1 and 2, given at the instance of the appellee, was to make appellant's liability depend upon the issue as to whether or not the employees of appellant were negligent in the operation of the train, and that these instructions excluded from the jury the issue of contributory negligence. The court, in instructions on its own motion, told the jury that the theory of appellant's defense was that the allegations set up by the appellee in his complaint were not true, and that he was not injured, or "if he was injured, it was caused by his own negligence." When the instructions are considered together, as they must be, they are not open to the criticism which appellant makes of them. By the instruction given on the court's own motion, and the first instruction given at appellee's request, the court submitted to the jury the issue of contributory negligence. Appellant made only a general objection to instruction No. 1. If appellant conceived at the trial, as it now contends here, that this instruction was too restricted to submit the issue of contributory negligence, its duty to the trial court was to point out the particulars wherein it claimed the instruction was defective. By these instructions, the court grounded the appellee's right to recover upon the fact that appellant was negligent, and that he was without fault. They were told "your verdict would be for the plaintiff if you believe that the plaintiff was without fault," etc. While this direction was couched

in general terms, it conveyed to the jury, in connection with the instruction given on the court's own motion stating the issues by the respective parties, the idea that the appellee's right to recover depended upon the issue as to whether or not he was free from contributory negligence. True, the court, if requested, should have framed instruction No. 2 so as to have embodied the idea that appellee was not entitled to recover if the jury found from the evidence that his own negligence contributed to cause the injury of which he complained. But the appellant made no such specific request as this, and it is manifest when these instructions are considered as a whole that the jury were not authorized to render a verdict in favor of the appellee if they found from the evidence that his own negligence contributed to the injury. While the instructions were not strictly in technical form, the criticism to be made of them relates more to verbiage than substance, and it was the duty of the appellant, if it desired the instructions put in more accurate verbiage, to present a correct prayer for instruction on the issue of contributory negligence; or, as before stated, to point out by specific objections to the court below the defect it now urges to these instructions.

(4-5)  Instructions numbered 1 and 2, given at the instance of the appellee, and instruction numbered 3, given at the instance of the appellant, presented the law applicable to such cases, in conformity with the doctrine announced by this court in *St. Louis, I. M. & S. Ry. Co.* v. *Hartung,* 95 Ark. 220; *Arkansas, etc. Rd. Co.* v. *Wingfield,* 94 Ark. 75; *St. Louis S. W. Ry. Co.* v. *Jackson,* 93 Ark. 119, and cases cited.

(6-7)  II.  Appellants' prayer for instruction No. 2, in effect told the jury that if the appellee arose to his feet and was standing up before the train came to a full stop, he was guilty of contributory negligence, and could not recover.  The court did not err in refusing to grant this prayer.  Even though the jury might have found that the appellee arose to his feet before the train came to a full stop and that he was standing in the aisle before the train

came to a full stop, this would not constitute contributory negligence as a matter of law, and it would still be a question for the jury to say under the circumstances as to whether the appellee was guilty of negligence.

In *Pasley* v. *St. Louis, I. M. & S. Ry. Co.*, 83 Ark. 22, Judge Riddick, speaking for the court, said: "It can not be said as a matter of law that every time a passenger on a freight train arises from his seat he is guilty of negligence. It is only when his standing is so protracted or so uncalled for that the court can say as a matter of law that it was unnecessary and imprudent that the question of his negligence will be taken from the jury."

It can not be said as a matter of law that passengers on mixed freight and passenger trains are guilty of contributory negligence if they arise from their seats before these trains come to a full stop at the stations which are the destinations of such passengers. As to whether they are guilty of contributory negligence would be a question depending on the circumstances. The speed the train is making at the time it approaches the station; the length of time the passenger has been standing before the train comes to a stop at his destination; the obstructions that are in his way, the causes actuating him to arise to his feet; and, in fact, all the surrounding conditions are to be considered. The mere fact that a passenger has been warned by a notice posted in the train not to arise before the train comes to a full stop would not make him guilty of contributory negligence as a matter of law if he failed to heed such warning. It would be the duty of the jury, of course, where such warning was posted and where it was shown that the passenger had, or by the exercise of ordinary care could have had, knowledge of such warning, to take into consideration these facts in connection with the other circumstances in determining whether or not the passenger was guilty of contributory negligence. And if the undisputed evidence showed that the passenger, having such warning, arose from his seat and stood in the car an unreasonable length of time, then it would be the duty of the court to declare as a matter of law that

the passenger was guilty of contributory negligence. See *St. Louis, I. M. & S. Ry. Co.* v. *Harmon,* 85 Ark. 503. In cases where the uncontroverted evidence shows that no man of ordinary prudence under the circumstances would have arisen to his feet and stood while the train was still in motion, notwithstanding a warning given against such conduct on the part of the passenger, then the court may declare as a matter of law that the passenger was guilty of negligence contributing to his injury and direct the jury to so find. Such, for instance, was the case of *Krumm* v. *St. Louis, I. M. & S. Ry. Co.,* 71 Ark. 590.

(8)   But this is not like that case. Here the question as to whether or not appellee was guilty of contributory negligence was properly submitted to the jury, just as it was in the cases of *St. L., I. M. & Sou. Ry. Co.* v. *Richardson,* 87 Ark. 101; *St. L., I. M. & Sou. Ry. Co.* v. *Brabbzson,* 87 Ark. 109; *St. L., I. M. & Sou. Ry. Co.* v. *Gilbreath,* 87 Ark. 572; *St. L., I. M. & Sou. Ry. Co.* v. *Billingsley,* 79 Ark. 335; *St. L., I. M. & Sou. Ry. Co.* v. *Hartung, supra;* and *St. L., I. M. & Sou. Ry. Co.* v. *Taylor,* 74 Ark. 31.

(9)   III.   The court did not err in refusing appellant's prayer for instruction No. 4. There was no testimony to warrant the jury in finding that the appellee's injury was caused by reason of the slack or voluntary movement of the train after it had stopped. True, the testimony showed that there were sixteen cars in the train, and that when a train of that character was stopped and the air released, there would be "a little slack," and in a train of that length that the slack would be about six and two-thirds feet; but there was no testimony to show that this slack would produce a sudden and violent movement of the train after the same had stopped. On the contrary, the testimony on behalf of the appellant showed that there was no violence whatever." The conductor stated: "There was no violence whatever." The uncontradicted evidence was that appellee's injury, if he was injured, was caused by a sudden jerk, and in the absence of testimony tending to show that the sudden jerk was or could have been produced by the inherent construction of a train of that character, or by the slack or voluntary

movement of the train after it was stopped, there was no testimony upon which to predicate a finding that the injury was produced by the voluntary movement of the train, and the instruction was therefore abstract. Moreover, even if the instructions were not abstract, the appellant got the benefit of the direction sought to be conveyed by it in the instructions which the court gave, in which the jury were told that appellee assumed the risk of the "necessary and usual jolts and jars," the "risk incidental to the stopping and starting of such trains." The appellant was therefore not prejudiced by the ruling of the court.

(10) IV. We are unable to say that the verdict is excessive. The credibility of the witnesses who testified as to the nature of appellee's injuries was for the jury. They have accepted the testimony of these witnesses; and giving the testimony its strongest probative force in appellee's favor, it was sufficient to sustain the verdict. The appellee's testimony showed that he was severely injured in his back and hip. He was confined to his bed for five weeks, and his suffering was intense. The testimony of physicians who attended him tends to show that his injury was serious and his suffering severe. We find no basis in the testimony to warrant us in reducing the amount of the verdict.

The judgment is therefore affirmed.