MISSOURI PACIFIC RAILROAD COMPANY v. CATHEY.

Opinion delivered July 9, 1923.

1. CARRIERS—NEGLIGENCE IN OPERATING MIXED TRAIN—EVIDENCE.— Evidence that a carrier operating a mixed passenger and freight train coupled some cars onto the train with such impact as to cause an unusual jerk to the car in which passengers were riding is sufficient to show negligence.

2. APPEAL AND ERROR—CONCLUSIVENESS OF APPROVED VERDICT.—The Supreme Court is slow to set aside a verdict as excessive where it has been approved by the trial judge.

3. DAMAGES—PERSONAL INJURIES.—Testimony that plaintiff, previously being in good health and having an expectancy of 20 years, and with an earning capacity of $7.50 a day, by defendant's negligence suffered a sprain of her sacro-iliac joint which rendered her unable to walk or to use her left arm or to conduct her sawmill business, and that she suffered constant pain, requiring the use of morphine, *held* to justify a verdict for $15,000.

Appealed from Chicot Circuit Court; *Turner Butler*, Judge; affirmed.

*E. B. Kinsworthy* and *B. S. Kinsworthy,* for appellant.

1.  Speculative evidence is not a basis for a jury's verdict, and, when based on such evidence, the verdict ought not to stand. 105 Ark. 161; 116 Ark. 82.  In this case, in order to reach their verdict, the jury had to find on the merest scintilla of evidence, on speculative evidence of the highest degree, that there was an injury to the arm and back, and that the rheumatism, or her

present condition, might be the result of such an injury. Not only so, but they had to ignore positive and uncontradicted evidence that there was no such injury, and that her present condition was due to natural causes, and not the result of an accident. 113 Ark. 353; 147 Ark. 481; 116 Ark. 82; 105 Ark. 698, 151 S. W. 288; 118 Ark. 349; 70 Ark. 385.

2. The verdict and judgment are excessive—not based on the evidence or any proved injury. 182 N. W. 901; 208 Pac. 1059; 230 S. W. 1070; 82 Ark. 61; 87 Ark. 109; 89 Ark. 9; 106 Ark. 177.

*N. B. Scott,* for appellee.

1. There is substantial evidence of the accident, the injuries received, the permanency of such injuries, and of negligence on the part of the appellant. The verdict therefore should not be disturbed. 107 Ark. 158.

2. The damages awarded are not excessive. 113 Ark. 265; 107 Ark. 158.

HART, J. This is an appeal by the Missouri Pacific Railroad Company from a judgment against it in favor of Mrs. Addie L. Cathey for injuries alleged to have been received by her from a sudden jolt caused by the coupling of a mixed freight and passenger train in which she had taken her seat as a passenger.

Mrs. Addie L. Cathey was a witness for herself. According to her testimony, on the 25th day of April, 1921, she was at the station of the defendant, Missouri Pacific Railroad Company, at Eudora, Ark., and took passage on a mixed freight and passenger train of the defendant to Kilbourne, La. She paid her fare to the conductor, and took her seat in a passenger coach facing Mrs. Wood Allen, with whom she had become acquainted at the station. While they were sitting there, there was a terrific jerk of the train backward and forward. The jerk of the train was so violent that it threw Mrs. Cathey out of her seat and over against Mrs. Allen. She was then thrown violently backward, and fell against the side

of the coach by the window. She was soon in great pain, and vomited in the car. The character and extent of her injuries, as detailed by her, will be set forth under an appropriate heading in the opinion.

Mrs. Wood Allen was also a witness for the plaintiff. According to her testimony, there was a sudden and violent jerk of the car in which they were sitting. Mrs. Cathey fell forward on Mrs. Allen, and then fell backward in her seat. Mrs. Allen was not injured. Mrs. Cathey soon became sick at her stomach and began to vomit. She continued to be sick until the train arrived at Kilbourne.

The conductor of the local freight train was a witness for the defendant. According to his testimony, there was no unusual jolt or jerk to the train. The jerk in question was caused by coupling some cars in the train, and was merely the jolt or jar usually incident to the operation of freight trains. According to his testimony, the accident was caused by a flying switch. The engine was coupled to seven freight cars, and four of them were uncoupled and let run back against the train. The striking of these cars against the train caused the jolt or jar which hurt the plaintiff.

From the evidence adduced in favor of the plaintiff the jury might have found that an unusual jerk caused by letting the four freight cars strike with too much violence against the remainder of the train caused the injury. This would constitute negligence on the part of the defendant, and would entitle the plaintiff to recover damages for whatever injuries she suffered. *St. L. I. M. & R. Co.* v. *Brabbzson*, 87 Ark. 109; *Ark. S. W. Rd. Co.* v. *Wingfield*, 94 Ark. 75; *St. L. I. M. & S. R. Co.* v. *Hartung*, 95 Ark. 220, and *St. L. S. W. Ry. Co.* v. *Overton*, 114 Ark. 98.

The question of the negligence or not of the railroad company, under the principles of law testified in the cases just cited, was submitted to the jury under instructions which fully and fairly submitted the duty of

a carrier operating a mixed freight and passenger train, to its passenger, and the verdict of the jury, being supported by the evidence for the plaintiff, is conclusive on that point upon appeal.

The main reliance of counsel for the defendant for a reversal of the case is that the verdict is excessive. Upon this branch of the case the plaintiff was also a witness for herself. According to her testimony, she was fifty years of age at the time she received her injuries on the 25th day of April, 1921. According to mortality tables, she had a life expectancy of 20.9 years. According to the testimony of the plaintiff, the jerk of the train threw her violently forward and then backward against the side of the coach by the window. She soon became sick at her stomach, and vomited over the car. The jolt caused her to suffer great pain, and she has suffered great pain ever since that time. The trial was had at the October term, 1922, after the injury in April, 1921. One of the physicians of the plaintiff advised her to use morphine, codine, and bromides, to alleviate her pain. Mrs. Cathey had formerly owned a drugstore, and had kept the morphine when she sold her drugstore. She began the use of morphine to allay her pain, and by the time of the trial she had become so addicted to the use of it that she took an injection of a quarter of a grain in her arm almost daily. As she expressed it, she had become a perfect fiend for the drug. Mrs. Cathey was confined to her bed for five weeks after she received her injuries, and during all of that time suffered great pain. As a result of her injuries her left arm has become smaller than her right one, and she can hardly use it at all. She can move her left arm a little, but her hand is drawn up, and she has lost the use practically of her left arm and hand. Her right leg is very weak and hurts her more or less all of the time. Her back is in a strain all of the time. If she uses her right leg it causes a strain in her back and hip which brings on great weakness and gets her all in a jerk. She has not been able to work since she received

her injuries, and has had to give up the management of her sawmill, which she had begun to operate for the purpose of clearing some land that she owned at the time she received her injuries. Her services were worth as much in operating the sawmill as the services of any employee she paid the most, and this amounted to $7.50 per day. She never used morphine prior to the accident, but had used it ever since that time, which is eighteen months. She has become addicted to the use of it to allay her pain, and, on account of her suffering, her body has become too disabled to work at all.

A physician examined her soon after her injuries and also at a later time. According to the symptoms described by her and the examination made by the physician himself, he thought that she was suffering from a sacro-iliac sprain. The plaintiff is a large fleshy woman, weighing 190 pounds. Partly on this account there were no bruises discoverable upon her body after the injury. Her blood pressure was 190. This high blood pressure might or might not have been caused by the injuries received. She might have had a high blood pressure from other causes before she received her injuries.

The son of the plaintiff, thirty-three years old, was also a witness for her. According to his testimony, he operated a hospital for seven months in France during the World War, and when he came home from the war he took the blood pressure of his mother and sister. He just happened to have the instrument with him and took their blood pressure at their request. The blood pressure of his mother at that time was about 140. This was prior to the time she received her injuries. Dr. Cathey examined his mother again after she had received her injuries. Her blood pressure was then 190. He diagnosed the injury to her back as a sacro-iliac sprain, and described this as a sprain of the ligaments holding the sacro-iliac joint in a fixed and stable position. As the result of the injuries, the joint was not as

strong as it should be, and this caused his mother pain. He described his mother's injury in detail, and testified that, from his experience in matters of this kind, he considered that his mother's injuries were permanent. He said that her left forearm was three quarters of an inch smaller than the right one; that the measurement of the largest part of her right thigh was one and a half inches smaller than the size of her left thigh. The plaintiff and her son also testified that her health had always been good prior to the time of her injury.

According to the evidence adduced for the defendant, the plaintiff's injuries were to a great extent simulated, and she had entirely recovered from the slight injuries received by her at the time of the accident. The plaintiff testified that she was unable to walk without a crutch or without holding to a wall or door. The defendant introduced witnesses who had seen her walk without the aid of a crutch or holding to any object for support. The plaintiff also testified that she had almost entirely lost the use of her left arm as the result of her injuries. The defendant introduced witnesses who testified that they had seen her use her left arm freely since she received her injuries. Physicians who had examined her testified that she had wholly recovered from any injuries received by her at the time of the accident, and that she was not permanently injured. We do not deem it necessary, however, to set out this testimony in detail. The jury returned a verdict in favor of the plaintiff in the sum of $15,000. As to the verdict being excessive in amount, we find nothing to warrant our interference with the conclusion of the jury on the subject. It is the primary duty of the trial court to control the amount of the verdict, and to set it aside if it is against the weight of the evidence. It hears the evidence, sees the witnesses, and is in possession of all the facts which are testified to before the jury. In our judicial system therefore the primary duty of correcting an excessive verdict rests on the trial court.

As we have just seen, it has the authority and is in possession of the facts which will warrant it in correcting an error of this kind. The case is different with us. The witnesses are not in our presence, as they were in the presence of the court and the jury trying the case. Both of them heard them testify and had a better opportunity of judging their credibility than this court could possibly have. Hence this court has been very slow to set aside the verdict of a jury, where, as in this case, a motion for a new trial on account of the verdict being excessive has been overruled by the judge who presided at the trial.

According to the testimony of the plaintiff and of her son, she was a large healthy woman, fifty years of age at the time she sustained her injuries. She was a business woman, and was accustomed to acting in that capacity. Her life expectancy was twenty years. She had been injured eighteen months at the time of the trial. During all of this time she had suffered constant pain. She says that she has not been able to do any work since she has received her injuries. Her son, who operated a hospital in France, during the World War, says that her injuries are permanent, and gave his reasons therefor. The plaintiff has become addicted to the use of morphine. She says that she never had used it prior to the time of her injuries, and has become addicted to its use because one of her physicians had told her to take it to alleviate her pain. This evidence for the plaintiff was weakened by cross-examination and by the affirmative evidence of witnesses for the defendant, but it was not overcome.

The amount of the verdict is not so great as to indicate that the jury might have found it while under the influence of passion or prejudice. The jury might believe the testimony of the plaintiff and of her son, and, if it did so, their testimony was sufficient to warrant the finding. Upon the whole case, as it appears to us, we cannot say that the verdict is excessive, and there is

nothing in the record calling for a review of the ruling of the trial court on this point. The instructions fully and fairly submitted to the jury the respective theories of the parties to this lawsuit, and the judgment will therefore be affirmed.